Stevens et al. *v.* Wheeler et al.

SYLVESTER STEVENS *et al.,* Appellants, *v.* ALVAH WHEELER *et al.,* Appellees.

APPEAL FROM ADAMS.

The purchase of land, and payment of the money, followed by possession by the purchaser and the making of lasting and valuable improvements upon the premises by him, takes a verbal agreement for the sale of lands out of the statute of frauds, and entitles the purchaser to a specific performance of the agreement.

THE original bill of appellant was filed August 31st, 1858, in Hancock Circuit Court, and alleges that Zadock Stevens, deceased, the father of all the complainants therein, except William Stratton, was in his lifetime seized as owner of the south-east quarter of section one, township three north, range six west; that Zadock Stevens being so seized, died in July, 1838, leaving complainants, (except Stratton,) and also Epaphras B. Stevens, Joseph F. Stevens, Jerusha Wheeler (intermarried with Alvah Wheeler,) Angeline Frost (intermarried with Jacob D. Frost,) and Mary Ann Bradley, wife of Morris L. Bradley, his only heirs and devisees. That by his said death, complainants, Sylvester Stevens, Zadock W. Stevens, Charles L. Stevens, Jerusha Wheeler, Angeline Frost, Mary Ann Bradley, Epaphras B. Stevens and Joseph F. Stevens, became tenants in common, or coparceners of said land, each of them owning one undivided eighth thereof. That after the death of Zadock Stevens, said Joseph F. Stevens, Mary Ann Bradley and Angeline Frost, conveyed their interest in said land to Alvah Wheeler, and that Epaphras B. Stevens conveyed his interest in said land to William Stratton; that said Wheeler had conveyed some part of said land to Levi G. Patchen, but as to the date of such conveyance, or amount of land conveyed, complainants are ignorant.

That said land was chiefly valuable for the timber thereon; and that Wheeler had cut and removed therefrom, timber of the value of $6,000; alleges a desire to have the land divided, or if that cannot be done, a sale made of the same, and the proceeds divided according to the interests of the parties.

Asks for answer under oath; that Wheeler be required to account and pay for the timber cut upon and removed from said land; that commissioners be appointed to make partition of the land if that can be done, and for such other and further relief as may be consistent with equity.

At the October term, 1858, said bill was, by leave of court, amended so as to show that a portion of said premises had been

conveyed, before the filing of said bill, by said Patchen, to one Philip L. Wheeler, who was made a party, and required to answer said bill, not under oath.

Alvah and Jerusha Wheeler filed their answer, admitting that Zadock Stevens died in 1838, leaving as his heirs the persons so described in the bill, and that he died seized of the legal title to the premises described in said bill, and that E. B. Stevens conveyed his interest therein to Wm. Stratton, as alleged in the bill. That Joseph F. Stevens, Mary A. Bradley and husband, and Angeline Frost and husband, conveyed their interest in said land to Alvah Wheeler. Said answer states that in 1836, Russell Hoyt claimed to own said land by patent title; that there was an outstanding tax title upon said land. That Wheeler and Hoyt were acquainted with each other. That the previous year Wheeler had been in Illinois and near said land, and about April, 1836, he went to the residence of Zadock Stevens, about four miles from Hoyt's, intending to purchase said land from Hoyt; that said Zadock Stevens was the father of Jerusha Wheeler, the wife of Alvah Wheeler; that said Zadock knowing all the facts, and that said Hoyt knew that said Wheeler had been to Illinois, suggested that Hoyt would not sell said land to Wheeler, as he would suppose it of great value, and proposed himself (Zadock Stevens) to go to Hoyt and purchase the land for Wheeler; that said Zadock Stevens accordingly went and bought said land for said Wheeler, and took a deed to himself (Zadock Stevens) and paid therefor $5, and upon his return home, Wheeler paid to said Zadock Stevens the $5 he had paid to Hoyt, which Stevens accepted in full. It was then agreed that Zadock Stevens should at some convenient time convey said land to said Wheeler, and said Stevens did not claim any real interest in said land. That about May, 1838, said Wheeler and his family removed, and Zadock Stevens came with them to Illinois, where said Zadock Stevens suddenly died, without having executed a deed for said land to Alvah Wheeler, and seized of the legal title to said land. The answer then denies that Zadock Stevens ever held any other interest save the legal title to said land, and states that said Zadock Stevens never was seized in fee simple of said land; states that equitable title was and is in Wheeler. That about 1838, said Wheeler took actual possession of the land, built a house thereon, and has ever since held possession thereof by himself and his tenants, and persons holding under him, and has controlled the same as his own, without molestation from the heirs of Zadock Stevens; that three of said heirs, to wit, Joseph F. Stevens, Mary A. Bradley and husband, and Angeline Frost and husband, of their own accord and without consideration, have conveyed their interest in said land to

Wheeler. Admits conveyance from E. B. Stevens to Stratton, but states that Stratton had notice of Wheeler's claim, and that said Wheeler at that time had actual possession of said land. Admits conveyance to Levi G. and Henry Patchen, of a portion of said land by Alvah and Jerusha Wheeler, but that before the filing of the bill herein, the same was conveyed to Philip L. Wheeler. Admits that land was mostly valuable for its timber, but denies that Wheeler has cut and removed timber to the value of $6,000.

States that in 1838, Alvah Wheeler made a farm near the land in dispute, and has since then got rails, fuel, etc., for ordinary farming purposes, for the use of said farm; that at the time of cutting said timber to fence said farm, the whole of said land was not worth over $300, and that since then, very little timber has been cut; that the whole land is not worth over $800, never has been worth over $1,200.

Afterwards, an agreement signed by the attorneys of the respective parties, that the answer of Alvah and Jerusha Wheeler should stand as the answer of Philip L. Wheeler, and the replication thereto as replication to his answer, and his appearance was then entered, and that no advantage should be taken because Philip L. Wheeler was not a party to the cross-bill, and that decrees might be entered in said cause on bill and cross-bill, against said P. L. Wheeler, the same as if he were a party thereto.

Replication in usual form filed.

Alvah Wheeler filed in said Hancock Circuit Court, October 11, 1858, his cross-bill against Sylvester Stevens and others, stating substantially the same facts as are set out in his answer to the original bill. Charges that the equitable title, so far as claimed by complainants in original bill, is in Wheeler, and asks to perfect the title to the Patchens, to whom he has conveyed twenty acres. Makes complainants to original bill and Jerusha Wheeler, defendants to cross-bill—waives answer under oath—asks decree that each of said defendants convey to Wheeler all their title to the land, and for further and other relief, etc.

The complainants in original bill filed their answer to cross-bill, neither admitting nor denying Hoyt's claim, tax sales, adverse claim, etc. Neither admit nor deny Wheeler having been in neighborhood of land in 1835. Denies that Zadock Stevens proposed to buy the land for Wheeler, or that he did buy it for said Wheeler, or for any other person than himself; also denies that Wheeler ever paid Zadock Stevens the amount paid by him for said land, and that said Stevens ever treated said land as Wheeler's, or said purchase as made for Wheeler, and avers that Zadock Stevens always treated and considered

the land his, as it in fact was; denies that there was ever any agreement about said land, between Stevens and Wheeler, but if there was, it was verbal, and not in writing.  Sets up and claims the benefit of all the statutes of Illinois, and especially the forty-fourth chapter of the Revised Statutes, known as statute of frauds and perjuries, against relief asked for by said cross-bill.  Denies that Zadock Stevens would at any time have conveyed said land to Wheeler, or that there was any obligation upon him to do so.  Denies that the land was ever regarded by Stevens and his family as Wheeler's land.  Admits that about 1838, Wheeler with his family moved to Illinois, and that Zadock Stevens came out about the same time, and died shortly afterwards, seized of the legal title to said land, of which he was the absolute owner.  Knows nothing about Wheeler's possession, but alleges, as in original bill, that the land was valuable principally for its timber, and that before the filing of the original bill, Wheeler had cut $6,000 worth of timber.  Avers that if Wheeler took possession, he did so in right of his wife as one of the heirs of Zadock Stevens, and as tenant in common with complainants in original bill, and those under whom they claim.  Denies that Wheeler ever had possession of said land as his own, but avers that whatever possession he had of said land was perfectly consistent with and not adverse to the title of said original complainants.  Admits the heirs as stated in original and cross bills.  Denies that J. B. Stevens, Mary A. Bradley and Angeline Frost, or any of them, have ever made voluntary conveyances, without a consideration paid to them of their interest in said land.  Denies that William Stratton had any knowledge when he purchased of E. B. Stevens, that said Wheeler claimed to own the whole of said land, and alleges that said Stratton, by his said purchase, acquired the legal and equitable title.  Avers that whatever possession Wheeler had at the time of Stratton's purchase, was only to the extent of his title, which was his wife's interest as one of the heirs of Zadock Stevens, and whatever interest he had acquired by conveyance from the other heirs of said Stevens, and that said possession was not adverse to E. B. Stevens.  Denies that the equitable title as against respondents is in Wheeler.  Neither admits nor denies conveyance by Wheeler to Patchens.

On the 16th day of March, 1859, Alvah Wheeler filed his replication to said answer, in the usual form, and on the same day a decree *pro confesso* was rendered upon said cross-bill against Jerusha Wheeler, and on the same day the said original bill was dismissed by said complainants as to said Patchens, and leave was granted by the court to amend said original bill by making Philip L. Wheeler a party thereto, and said P. L. Wheeler

entered his appearance to said bill and cross-bill, and by con sent of all parties, the venue of said cause was changed to Adams county, and an agreement was then entered of record, by consent of parties, that all the pleadings in the case up to that time, should stand as good for and against P. L. Wheeler, as if he had been a party to all the proceedings.

The deposition of *Nathan B. Wheeler*, taken on behalf of Alvah Wheeler. States that he is nearly sixty-four years of age ; that in 1836, he knew Stevens, Hoyt, and Alvah Wheeler. Wheeler was Stevens' son-in-law. Alvah Wheeler, my brother, had been to Illinois, and wanted to purchase some land of Russell Hoyt, and I took him to Danbury, Conn., to his father-in-law. We started to buy this land of Hoyt. At Mr. Stevens' something was said about our business, and Mr. Stevens told Alvah that he (Stevens) could buy the land of Hoyt cheaper than he (Wheeler) could, as he (Hoyt) knew that he (Wheeler) had been to Illinois, and if he (Wheeler) should propose to buy of Hoyt, he (Hoyt) would want a larger price. Mr. Stevens asked Alvah how much he should give for the lot, and Alvah said fifty dollars, if he could not get it cheaper. Alvah and I went to Danbury, and when we returned, Stevens had got home, and was quite elated because he had got the land for five dollars. He bought the land for Alvah Wheeler. Alvah took out of his pocket five dollars after Mr. Stevens had bought the land, and handed it to him, and he took it. Alvah also offered to pay him for his trouble, but he declined to receive it.

Stevens said the title had better remain in him, as Alvah's creditors might trouble him. Alvah was then involved in debt. All I know about what Stevens paid Hoyt, was what Stevens said. I saw no money paid by Stevens to Hoyt. Some time after this, Mr. Stevens, speaking to me, referred to this land as Alvah's Hoyt lot. I don't remember what was done with the deed Stevens got from Hoyt.

To cross-interrogatories he answers : I lived six miles from Hoyt, and two miles from Stevens, at the time of said purchase. Knew nothing about the purchase by Stevens from Hoyt, except what Stevens said after his return from Hoyt's ; the deed shown by Stevens on his return is the same one hereto attached, marked A, and bears date April 23, 1836.

Deposition of *Morris S. Bradley* on behalf of Alvah Wheeler. Am sixty years old ; live in Danbury, Conn. Am brother-in-law of Alvah Wheeler. I often heard the purchase of the Hoyt lot spoken of as a purchase for Wheeler, in Stevens' family after it was made—never before. Never heard Zadock Stevens claim the land during his life. Charles L. was one of the executors of Zadock Stevens, and he applied to me for power of attorney to

sell my wife's interest in Zadock's lands in Illinois. Never heard Zadock Stevens say anything about the land. After the purchase, Alvah took possession of the land and cultivated it. I considered it his, and I and my wife deeded it to him, because we thought we had no right to it. No consideration was paid to us for the deed.

Deposition of *Mary Ann Bradley* on behalf of Alvah Wheeler. Am fifty-seven years old ; daughter of Zadock Stevens. Alvah Wheeler married my sister. I heard Zadock Stevens say that he purchased the Hoyt lot for Alvah Wheeler. I do not know who paid the consideration money. I supposed this land was considered Alvah's ; at least I so considered it. I was not present at the time of the purchase from Hoyt, and heard no conversation at that time ; never heard any of my father's family speak of the land before his death.

Never heard that any one but Alvah Wheeler claimed or had control of the land. Zadock W. Stevens wrote to me August 7, 1857, about my interest in my father's land in Illinois, but said nothing about the Hoyt lot.

Deposition of *Angeline Frost* on behalf of Alvah Wheeler. Am fifty-four years old ; live in Putnam county, N. Y. Was daughter of Zadock Stevens. In 1836, I heard my father tell Alvah Wheeler not to go to Hoyt's to buy the land, because Hoyt would ask him a large price, but to let him (father) go, and he could buy it for him cheaper than he could. After father came back from Hoyt's, he said he bought the land for five dollars. I don't know to whom he took the deed. I supposed, and still do, that it was Wheeler's land. Don't know who paid the purchase money. I have released my interest in said land because I considered it his.

Deposition of *Jacob D. Frost* on behalf of Alvah Wheeler. I am sixty-three years old ; live in Putnam county, N. Y. Married Zadock Stevens' daughter after 1836. Know nothing of the purchase of said land from Hoyt. Since the death of Zadock, have heard his family speak of the land as Wheeler's. Have always heard that Wheeler owned and occupied it, and I and my wife conveyed to him without remuneration. In 1855, I lived in Illinois, neighbor to Alvah Wheeler, Sylvester, Zadock W. and E. B. Stevens, and Wm. Stratton. The Hoyt lot was considered part of Wheeler's farm, and I never heard of any claim to it except Wheeler's.

Deposition of *Phebe Stevens* on behalf of Alvah Wheeler. Am eighty-four years old July 30, 1859. Don't recollect where Alvah Wheeler was in 1835, but when he went to Illinois, his family lived with me and Zadock Stevens, deceased. (Agreement that Wheeler went to Illinois in fall of 1834, and returned

20

to Connecticut in spring of 1835; again returned to Illinois in 1837, and returned in 1838 to Connecticut.)

I was acquainted with Russell Hoyt. (She here makes same statement about the purchase from Hoyt that Mrs. Bradley makes.) Have no recollection of Zadock Stevens ever speaking of the Hoyt lot after the purchase. I think it was always regarded as Alvah Wheeler's land. Have been told the land was in Hancock county. My son Zadock first claimed an interest in the land; he was not present at the purchase.

Deposition of *Samuel Irwin* on behalf of Alvah Wheeler. Witness lived within three or four miles of this land; has lived in the neighborhood since 1837; the land is timber and brush; it is about one half mile from Wheeler's farm. In the winter of 1837 and '38, Haskins made rails on it for Alvah Wheeler. Alvah Wheeler claimed the land. My understanding is that this land has always been used in connection with the Wheeler farm; the Wheeler farm was occupied for Wheeler, as I understood it.

Deposition of *Patsey Massic*, taken by Alvah Wheeler, proves that her father, Haskins, lived on the land in 1838. She thinks the improvements on the Wheeler farm were commenced in 1838. I heard in 1838, Stevens call the land Alvah Wheeler's; he said that he had bought it for him. Alvah Wheeler claimed the land, and exercised acts of ownership over it in 1838.

Deposition of *Joseph F. Stevens*, on behalf of original complainants. I am a son of Zadock Stevens, deceased. He died July 13, 1838. I resided with him to the time of his death. I know of his purchasing the land in dispute from Hoyt; Wheeler was then living in New York. I sold my interest in said land in 1840, to Alvah Wheeler, for $15. Some time in 1846, Wheeler told me he was cutting timber upon said land, and that he did not know but that he was running some risk in doing so. I never heard during my father's lifetime of Alvah Wheeler having any claim to the land; never heard Wheeler claim that father purchased the land for him until this controversy commenced.

I heard Wheeler offer to buy the land from my father in 1838. I was one of my father's executors.

Deposition of *Sylvester Stevens* on behalf of original complainants, except Sylvester Stevens. Zadock Stevens bought the land of Hoyt; think on April 23, 1836; I saw the deed. Alvah Wheeler was not in Danbury at that time, to my knowledge. In June, 1837, I heard Zadock Stevens tell Wheeler that he had purchased the land of Hoyt; this was at Poughkeepsie, N. Y. Wheeler was talking of going to Illinois, and

Zadock encouraged him to do so, and told him he had land in Illinois, but spoke more particularly about the Hoyt lot, because there was a tax title on it as he said.

Wheeler did go to Illinois in the fall of 1837; in January following, he wrote to Zadock Stevens respecting said land; he said it was a rare lot. Don't know where the letter is. Wheeler returned to Connecticut in spring of 1838.

Zadock Stevens went to Illinois in May, 1838, with Wheeler, to look after this land, as he said. He wrote to his family about the last of June or first of July, 1838, in regard to this land, and in his letter he said that to secure the title he deemed it best to build a house upon it, which he could do with Alvah Wheeler's assistance. Don't know where the letter is. Zadock Stevens died in Knoxville, Illinois, July 13, 1838. I first came to Illinois in 1850. In 1851, I had a conversation with Wheeler in regard to our title; he said the tax title was of no account; that he had cut timber from this land to fence his farm, and had not been called to account for it. In January, 1857, I heard Alvah Wheeler say to Zadock W. Stevens that he never bought this land of his father, nor did he (Wheeler) ever give him five dollars to buy it with, nor make any bargain with him, and that he (Wheeler) had no legal claim to the land, and Wheeler then offered to buy Zadock W.'s interest.

Wheeler married my sister.

I conveyed my interest in the land to Zadock W. Stevens on the 26th day of September, 1859, by quit-claim deed, and have no interest in the event of this suit.

On cross-examination he says: I am the same Sylvester Stevens named in the original bill as a complainant. I was not present when the purchase was made from Hoyt, but I saw the deed about the last of April or first of May, 1836. I was in Westport, Conn., on the 23rd April, 1836, twenty-five miles from Zadock Stevens' home.

Zadock W. Stevens paid me $50 for my interest in the land; my only object in selling was to get out of this suit.

Exhibit A, referred to in and attached to the deposition of Epaphras B. Stevens, contains the following passage: " I wish to take such measures in relation to the Hoyt lot as will secure my title and prevent litigation. Possession will most effectually do this; I therefore wish to put up a small house upon it, and get in a tenant, but perhaps I shall not accomplish this. The lot is said to be worth $1,000, which I think is worth saving. Alvah thinks that he, George and myself, can put up a cot in about a week when we can get to it, but at present it is impossible to leave the business here."

Complainants in original bill then read the affidavit of Zadock

W. Stevens, that the letter referred to in the deposition of Joseph F. Stevens in answer to the 17th interrogatory, is not and never has been in the possession of any of said complainants except Charles L. Stevens, who was one of the executors of Zadock; that Charles L. had the letter in his possession in Connecticut until 1852, when, being about to remove to Illinois, and deeming it of no importance, he destroyed it with other papers supposed to be of no value.

It appears that complainants read on the hearing a quit-claim deed from Sylvester Stevens and wife, to Zadock W. Stevens, dated September 26, 1859, conveying his interest in said Hoyt lot, duly executed and acknowledged.

Defendant's certificate of evidence shows that defendants read on the hearing, patent from the U. S., and deeds showing title in Zadock Stevens, and proved that they come from the possession of Wheeler. A deed from Joseph F. Stevens to Alvah Wheeler, dated Nov. 21, 1840, purporting to convey all his right, title and interest in same land. A certificate of county clerk of Hancock county, purporting to show that said land was sold for taxes of 1829, on the 9th January, 1830, and for taxes of 1831, on 7th January, 1832.

The court, SIBLEY, Judge, rendered a decree, reciting as follows:

" Disregarding the deposition of Sylvester Stevens, and ordering that complainants in the original bill, and each of them, should, within thirty days, convey to Alvah Wheeler all the title which they had when the cross-bill was filed, Oct. 16, 1858, to said premises, and that upon default thereof, the master convey at Wheeler's cost. That all the title be divested out of complainants in original bill, and vested in Alvah Wheeler— relief against Jerusha Wheeler being waived—and that complainants in original bill pay seven-eighths of cost, and Wheeler one-eighth of cost."

And thereupon complainants in original bill prayed an appeal, which was allowed.

WILLIAMS, GRIMSHAW & WILLIAMS, for Appellants.

SKINNER, BENNESON & MARSH, for Appellee.

WALKER, J. Waiving the consideration of the question, whether the facts in this case establish a resulting trust, we are clearly of the opinion, that they show a sale of the land in controversy, by Stevens to Wheeler. After Stevens became the purchaser, and received the deed from Hoyt, he was paid the full amount of the purchase money, and agreed to convey to

Wheeler, who under that agreement went into the actual possession of the land, made lasting and valuable improvements upon it, and has held it for near twenty years under the purchase, and during all that time has exercised acts of ownership; and there is no evidence that any of the heirs of Stevens have, during the greater portion of that time, asserted any right in the premises. This we think manifestly takes the case out of the operation of the statute of frauds and perjuries. It has been uniformly held by the courts of Great Britain, as well as of this country, that the purchase, the payment of the money, followed with possession by the purchaser, and the making of lasting and valuable improvements upon the premises by him, takes a verbal agreement for the sale of lands out of the statute, and entitles the purchaser to a specific performance of the agreement. And where a claim like this has been permitted to lie dormant for such a length of time, without asserting title, it has every appearance of being stale, and is entitled to but little favor at the hands of the chancellor, even if the proof was less satisfactory, of the rights of the purchaser.

We perceive no reason for reversing the decree of the court below, and it must be affirmed.

*Decree affirmed.*