HATTIE POND

*v.*

DAVID SHEEAN *et al.*

*Filed at Ottawa March 29, 1890.*

1. STATUTE OF FRAUDS—*parol contract for sale of land—performance to take a case out of the statute.* A parol contract for the sale of land will be enforced when the purchase money has been paid, possession taken under the contract, and lasting and valuable improvements made on the land.

2. SAME—*parol promise to one's child—performance by the latter.* Where the owner of land makes a parol promise to his child to convey lands to him, and the child goes into possession relying on such promise, and makes valuable and lasting improvements, such promise will rest upon a valuable consideration, and may be enforced in a court of equity.

3. SAME—*parol agreement to convey—taking possession essential.* But a court of equity will not decree the specific performance of a parol agreement to convey lands, where the purchaser has not entered into possession under the contract.

4. In this case, a person having no children of his own, took an infant daughter of a relative of his wife, to raise as a member of his family, and promised orally, with his wife's consent, that if the child's father would permit her to become a member of his family, and assume the name of her adopter, and allow her to live with the family of the latter, he would, on his death and that of his wife, give the child all the property he might own. The contract was fully performed by the child and her father. It was *held,* that a court of equity could not decree a specific performance of the parol agreement, solely on the ground that the adopted child had never been put in possession of the property under the contract.

5. SAME—*as to lands and personalty—in one contract—treated as an entirety.* A verbal agreement to give all of one's lands and personal property, at his death, to a designated person, will be regarded as an entire contract, so that if it is determined to be void as to the realty, it will be void as to the personal property also.

APPEAL from the Circuit Court of JoDaviess county; the Hon. JOHN D. CRABTREE, Judge, presiding.

Messrs. Hopkins, Aldrich & Thatcher, and Mr. E. L. Bedford, for the appellant:

If one of the contracting parties induces the other to so act that if the contract be abandoned he can not be restored to his former position, the contract must be construed as partly performed. Pollock on Contracts, 641; Adams' Eq. sec. 202; 1 Story's Eq. Jur. sec. 761.

Unless it appears from the contract itself that it is not to be concluded within one year, it is not within that clause of the Statute of Frauds. *Fenton* v. *Emblers,* 3 Burr. 1278.

When the consideration consists of services to be rendered which can not be estimated by any pecuniary standard of value, the performance of the service will entitle the vendee to a specific performance. *Rhodes* v. *Rhodes,* 3 Sandf. Ch. 279; *Lamb* v. *Hinsman,* 46 Mich. 112; *Davison* v. *Davison,* 13 N. J. Eq. 246; *Gupton* v. *Gupton,* 47 Mo. 37; *Sutton* v. *Hayden,* 62 id. 101.

The evidence shows there was such a performance of the contract as to take it out of the statute. *Gupton* v. *Gupton, supra; Van Dyne* v. *Vreeland,* 11 N. J. Eq. 371; 103 Ill. 668; *Warren* v. *Warren,* 105 id. 568; 2 Story's Eq. Jur. sec. 761.

Mr. John J. Jones, for the appellees:

The alleged agreement was testamentary in its character, and void, as not in conformity with the Statute of Wills. 1 Redfield on Wills, 169, secs. 6-10; *Gorham* v. *Graham,* 34 Pa. St. 475; *Comer* v. *Comer,* 120 Ill. 428.

Rights of inheritance can not be conferred by a parol agreement. *Shearer* v. *Weaver,* 56 Iowa, 578; *Wallace* v. *Rappleye,* 103 Ill. 258.

Possession is necessary to a part performance to take the case out of the Statute of Frauds. *Updike* v. *Armstrong,* 3 Scam. 564; *Shirley* v. *Spencer,* 4 Gilm. 600; *Ramsey* v. *Liston,* 25 Ill. 114; *Stevens* v. *Wheeler,* 25 id. 300; *Keys* v. *Test,* 33 id. 319; *Fitzsimmons* v. *Allen,* 39 id. 440; *Laird* v. *Allen,* 82

id. 43; *McNamara* v. *Garrity*, 106 id. 387; *Bright* v. *Bright*, 41 id. 97; *Kurtz* v. *Hibner*, 55 id. 514; *Bohanan* v. *Bohanan*, 96 id. 591; *McDowell* v. *Lucas*, 97 id. 493; *Gudgel* v. *Kitterman*, 108 id. 50.

Mere possession, even with superadded improvements, will not be deemed part performance, if the possession was obtained otherwise than under the contract. *Wood* v. *Thornly*, 58 Ill. 464; *Padfield* v. *Padfield*, 92 id. 198; *Pickerell* v. *Morss*, 97 id. 224; *Cronk* v. *Trumble*, 66 id. 428; *Temple* v. *Johnson*, 71 id. 13; *Gorham* v. *Dodge*, 122 id. 528; *Kaufman* v. *Cook*, 114 id. 11.

The contract being entire as to realty and personalty, can not be enforced as to the personalty alone, when the statute applies as to the realty. *Thayer* v. *Rock*, 13 Wend. 53; *Cook* v. *Tombs*, 2 Aust. 420; *Lea* v. *Barber*, id. 425; *Meyers* v. *Schemp*, 67 Ill. 471.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in equity, brought by Hattie Pond, to set aside the last will of Bradner Smith, deceased, and to enforce the specific performance of a parol agreement alleged to have been made on or about the first day of December, 1857, between Marshal B. Pierce, father of complainant, and Bradner Smith, under which the complainant claims all the property, both real and personal, which the said Bradner Smith owned at the time of his death. The bill sets out the contract, substantially, as follows:

Bradner Smith, after consultation with his wife, Mary Smith, and with her full consent and approval, in order to induce oratrix' father to consent to the separation and permit her to become a member of the family of said Bradner Smith, made a proposition to your oratrix' father, that if he would permit them, the said Bradner and wife, to take your oratrix to their home, and would permit her to assume the name of Smith instead of Pierce, and allow her to live with them as

their child, the said Bradner Smith, in consideration thereof, would give your oratrix, at their death, all his property, real, personal and mixed, that he might have in his name or under his control at the time of decease; that in consideration of these promises her father consented and agreed to said proposition, and then and there entered into a contract with said B. Smith, with the knowledge and consent of his wife, Mary Smith, that oratrix should go and live with them as their child, assume the name of Smith instead of Pierce, take the place as their child, live with them as such, and in consideration thereof, at their death, all of his estate, real, personal and mixed, was to become and be the property of your oratrix; that in compliance with said contract, oratrix then and there, to-wit, December 1, 1857, did leave her father's home and go to the home of B. Smith and wife, and became a member of their family, and assumed the name of Smith instead of Pierce, and was known as Smith from thence until oratrix' marriage; and oratrix faithfully carried out her part of said contract, and was a true and faithful child of said Mary and B. Smith during their lives, and performed her part of above contract.

It is also alleged that complainant lived with the Smiths, under said agreement, until she was twenty-nine years of age, when she was married to Dr. Frederick L. Pond. It is also alleged that Mary Smith died May 21, 1885, and that Bradner Smith died March 31, 1887. It is also alleged that, "in violation of said contract, etc., and in fraud of your oratrix' rights in the premises, Smith was induced, December 19, 1885, to execute a purported will, and on January 7, 1887, shortly before his death, executed a purported codicil thereto, by which will and codicil he deprived oratrix of any part of his property whatever;" that Bradner Smith, at the time of executing said purported will and codicil, was weak in mind, and in his dotage, and by reason of said condition was induced, in fraud of oratrix' rights, to execute the same. The complainant sets out in the bill a list of property, real, personal and mixed,

owned by the deceased at the time of his death, valued at $20,000. The bill then prays that the will and codicil may be declared null and void, that complainant be declared to be the owner and entitled to the possession of the personal property and notes, and that deeds may be executed conveying the lands to her.

The executor and devisees under the will put in answers to the bill, in which they deny the making of the alleged contract, and plead the Statute of Frauds thereto. They also denied all the substantial allegations of the bill. A cross-bill was also filed by one of the legatees, Clara A. Smith; but as that has no bearing on the decision of the case, it is not necessary to set out its contents here.

Replication having been filed, the cause proceeded to a hearing on the pleadings and evidence, and the court entered a decree dismissing the bill for want of equity, and the complainant appealed.

The complainant's mother was a sister of Mary A. Smith, the wife of Bradner Smith. She died May 10, 1854, when complainant was about two years old. Bradner and Mary Smith had no children of their own, and soon after the death of complainant's mother they took complainant to their home, and she there remained until the second marriage of her father, July 28, 1856, when she returned home to her father. It seems that during the two years' residence of complainant with the Smiths they became very much attached to her, and made an effort to arrange with complainant's father for her return to their home,—Pierce, the father of complainant, residing at Savannah, and the Smiths at Galena.

The contract under which complainant was taken into the Smith family was claimed to be proven by one witness, who was present when the contract was made—Mrs. Pierce, now the widow of complainant's father. She stated that she was married July 28, 1856, to Marshal B. Pierce, who, at the time of their marriage, had six children,—Hattie, the youngest,

being four years old at the time. "She continued to reside in our family six or eight months after our marriage. At the end of that period of eight months, arrangements were made by my husband, Marshal B. Pierce, with Bradner Smith and Mary A. Smith, his wife, through Mary A. Smith, with respect to the future care, custody, nurture and services of the complainant, Hattie Pond, (then Pierce,) by which they were to keep her and raise her as their own child, giving her the advantage of a good education, and were to leave her their property, whatever it was, when they were done with it, in consideration of the future care, nurture and services of the complainant. This agreement was entered into at our house in Savannah. I was present when the arrangement was made. I think it was in 1857. I don't know that any one was present except Mr. Pierce, myself and family. Mrs. Smith made the contract on the part of Bradner Smith and herself. They resided at Galena at that time. Mrs. Smith, at that time, said, concerning when Hattie, the complainant, was to have the property of the Smiths, that she was to receive the property when they were done with it—she was to have all they had. She had always expected to take Hattie, but never had claimed her until Mr. Pierce was married, when she thought she ought to have her. Mary A. Smith meant by that expression, 'when they were done with it,' referring to their property at their death. Marshal Pierce, my husband, and I, supposed them to refer to the death of Mr. and Mrs. Smith. After the arrangement was entered into as above, Mrs. Smith took complainant home with her to Galena."

The declarations of the Smiths, on different occasions during the time that Hattie resided with them, were proven by several witnesses, to the effect that what they had would be hers when they were through with it; that she would be an heir, etc., but no person now living heard the contract except Mrs. Pierce, whose evidence is given above. At the time the arrangement relied upon was made, Smith owned real and

personal property, and as heretofore shown, he owned real and personal property at the time of his death. Mary Smith, the wife of Bradner, died May 21, 1885, and the latter died March 31, 1887.

There is no controversy in regard to the fact that complainant, from the time she was four years of age, until she married, at the age of twenty-nine, on October 10, 1880, resided with the Smiths as a member of their family. She was boarded, clothed and educated by them, and at the same time, she performed such services as are usual in a family occupying the position in society that the Smiths occupied. So far as appears, she was treated as a child, and no doubt performed the same services and received the same advantages in education, clothing, and other respects, that she would have received if she had been a child of the Smiths. Whether Bradner Smith, in raising complainant from infancy to womanhood, in clothing and educating her, in aiding her to consummate an advantageous marriage, in giving her property, did all that, in morals, he should have done, is not a question which we are called upon to determine. The complainant seeks, by her bill, the specific performance of a parol contract. Under the contract, she claims personal property, choses in action and real estate, but as she never was in possession of any of the property, under the contract, the Statute of Frauds being pleaded, is she entitled to a decree? While other questions are involved, this is the most important one.

The law may be regarded as well settled, that a parol contract for the sale of lands will be enforced where the purchase money has been paid, possession taken under the contract, and lasting and valuable improvements made on the lands. (*Stevens* v. *Wheeler*, 25 Ill. 300; *McNamara* v. *Garrity*, 106 id. 387; *Fitzsimmons* v. *Allen*, 39 id. 440; *Laird* v. *Allen*, 82 id. 43.) So, also, where the owner of real estate makes a parol promise to his child to convey lands to him, and, relying on such promise, the child goes into possession of the lands and

makes valuable and lasting improvements, such a promise
rests upon a valuable consideration, and may be enforced in
equity. (*Kurtz* v. *Hibner*, 55 Ill. 514.) In the case last cited,
it was held that no important distinction exists between such
a promise and a sale. But we are aware of no well considered
case holding that a court of equity will decree the specific per-
formance of a parol agreement to convey lands where the pur-
chaser has not entered into possession under the contract, but,
on the other hand, this court has held in a number of cases
that possession, under the contract, must be established in
order to take the case out of the Statute of Frauds. (*Wood*
v. *Thornly*, 58 Ill. 465.) In the case cited it is said: "To
constitute such performance as will avoid the statute, it must
appear that the party entered into possession under the agree-
ment itself. * * * The mere possession of land under a
parol agreement of sale, even with the superadded fact of
valuable improvements, will not be deemed part performance
if the possession was obtained otherwise than under the con-
tract."

In *Temple* v. *Johnson*, 71 Ill. 14, the question arose whether
full payment of the purchase money, without taking possession
of the premises, was sufficient to take a case out of the Statute
of Frauds, and in disposing of the question it is said: "In
the case of *Fitzsimmons* v. *Allen*, 39 Ill. 440, it was held, that
the payment in full of the purchase money, and the possession
of the property purchased, took the case out of the Statute of
Frauds. This is the greatest relaxation of the requirements of
the statute that has been made by this court. Nor do we in-
cline to go any further in that direction. Whilst the decisions
of the various courts are not entirely uniform, the general rule
seems to be as stated by Story in his work on Equity Juris-
prudence, (sec. 761,) that the general ground upon which courts
proceed to execute parol contracts for part performance, as the
governing rule, is, 'that nothing is to be considered as a part
performance which does not put the party into a situation

which is a fraud upon him unless the agreement is fully performed;' and he says, that although formerly a payment of the purchase money was considered a sufficient part performance to take the case out of the statute, the rule is now otherwise settled, and in this he is fully sustained by the adjudged cases, both in the British and American courts."

In *Ferbrache* v. *Ferbrache*, 110 Ill. 210, this court again held, "that by the Statute of Frauds all contracts for the transfer of title to land must be in writing, and to take a case out of the statute it is indispensable that the contract shall be established, by competent proofs, to be clear, definite and unequivocal in all its terms, and that possession shall have been taken of the land, under the contract, and payment of the purchase money made." See, also, *Kaufman* v. *Cook*, 114 Ill. 13; *Clark* v. *Clark*, 122 id. 388; *Gorham* v. *Dodge*, 122 id. 528.

A case much in point is *Wallace* v. *Long*, 105 Ind. 522. In that case a child seven years old was taken under an agreement, that if she would live with decedent and her husband until their death, they would make her their heir, and at their death they would will her their entire estate. Property, real and personal, was left, of the value of $6000, but no will was made, as per the contract. In deciding the case, it is said: "If the Statute of Frauds presents no obstacle to the enforcement of the contract, then, so far as the record discloses, none exists. It can not, of course, be denied, that if the contract had been in writing, or if, in pursuance of an oral contract, the plaintiff had been put in complete possession, and she had otherwise fully performed on her part, specific performance could have been enforced. It would then have presented a case analogous in principle to *Mauck* v. *Melton*, 64 Ind. 414. This much has been said to show that the only impediment in the way of a specific enforcement of the contract involved in this case is the Statute of Frauds. When the title to property is to be acquired by purchase, the Statute of Frauds will op-

erate upon and affect the contract in precisely the same manner, whether the consideration for the purchase is to be paid in services, money, or anything else. In either case, such a contract, being in parol and entirely executory, can not be enforced by either party. That the evidence in this case tends to support the view that it was the purpose of the intestate to make provision for the plaintiff's ward by a will, may be conceded; but as the agreement to do so was never manifested in writing, signed by her, and as it involved an agreement for a sale of real estate and for the transfer of personal property, such agreement was subject to the operation of the Statute of Frauds, equally with all other agreements for like sales. Because the agreement was not withdrawn from the operation of the statute by part performance, it can not be specifically enforced; neither can it be the foundation of an action for damages."

It will be observed that in the case cited, while the agreement was one of the same character as the agreement involved here, the same rule was held to apply as if it was a mere verbal sale of real estate, where no possession has been taken under the contract.

In view of the authorities, we are able to arrive at but one conclusion, and that is, that the contract relied upon, resting in parol, is within the Statute of Frauds, and void. Conceding that the complainant was taken into the family of the Smiths under an arrangement as testified to by Mrs. Pierce, and that they were to leave her their property when they were done with it, "in consideration of the future care, nurture and services of complainant," and treating the surrender of complainant by her father, and such services as she may have rendered, as a payment for the property agreed to be given her, still, as she never obtained possession of any of the property under the contract, under the authorities, the agreement, resting in parol, was void by the Statute of Frauds, and can not be enforced in a court of equity. It is imposing no

hardship upon parties, where the title to real property is involved, to require their contracts to be reduced to writing, and it is the safer rule. Where the terms and conditions of a contract depend upon the recollections of witnesses after the lapse of many years, as is the case here, there is always much uncertainty in regard to what the contract really was; and where the title to real property is involved, no rule ought to be adopted which will encourage the making of such contracts.

There are cases cited in appellant's brief which seem to lay down a different rule, and which seem to support appellant's position, but we have not the time to review them here, nor do we think it would serve any useful purpose to do so. It is sufficient to say, that the cases referred to are not in harmony with the principle announced by the decisions of this court, and we are not inclined to follow them.

But it is contended in the argument, that the services rendered by complainant, and the facts, as they appear from the record, that the whole course of her subsequent life was changed in consequence of the agreement, prevent the Smiths from relying on the Statute of Frauds,—in other words, by the acts of performance complainant would suffer an injury amounting to a fraud, unless relief is granted under the contract. The rule on this subject is laid down in *Wallace* v. *Rappleye*, 103 Ill. 231, and the cases there cited. But we do not regard the acts of performance proven in this case, such as would authorize a court in holding that complainant has suffered an injury amounting to a fraud unless she is granted relief. When the father of complainant consented that she might enter the Smith family, he was a man in very moderate circumstances. He had a wife and six or seven children to support, and for several years relied upon a salary as clerk of a steamboat on the Mississippi river for the support of himself and family, while, on the other hand, Bradner Smith was in good circumstances—alleged to be worth $40,000. He had no family but himself and wife. He was therefore in a condition to afford

complainant many advantages in her rearing and education that she would not receive if she remained with her parents. So far, therefore, as being placed in a worse condition on account of the agreement, it is without foundation. Indeed, the manner in which complainant was reared and educated, and the marriage she subsequently contracted through the influence of the Smiths, seem to show that her condition in life was improved rather than injured by the arrangement.

It will, however, be observed, that complainant seeks by her bill to recover personal property as well as real estate, and it may be claimed that as to the personal property the agreement is not within the statute. The contract, however, must be regarded as an entirety, and if void as to real estate it must also be held void as to personal property. This is a rule of law well established. *Meyers* v. *Schemp*, 67 Ill. 469.

The decree of the circuit court will be affirmed.

*Decree affirmed.*