## Wright, et al. v. Wright.

(Decided June 25, 1926.)

### Appeal from Simpson Circuit Court.

1. Wills.—Where husband and wife agree survivor shall have all property at death of other, and execute mutual wills, binding contract subsists, and equity will grant relief to survivor carrying out agreement, if predecedent revokes will.

2. Wills.—"Mutual wills" are those which are reciprocal, giving property of each testator to other, and are sometimes called "reciprocal," "double," or "counter" wills.

3. Wills.—"Joint and mutual will". is one executed jointly by two persons with reciprocal provisions, and which shows on its face that devises are made one in consideration of the other.

4. Wills.—Mutual promises of husband and wife held sufficient consideration to support agreement to make reciprocal wills devising to survivor all property.

5. Wills.—Generally, efforts of one of parties to mutual will to secretly revoke will and dispose of property are futile, where the other party has faithfully kept agreement; there being sufficient consideration.

6. Wills—Wife, Having Carried Out Agreement to Make Reciprocal Will, is Entitled to Enforce Trust in Property Given by Husband to Children, Though Husband's Will Could Not be Found, and Wife had Knowledge that he had Secured Possession thereof Before Death, but did Not Know that he Contemplated Revocation or Intended to Violate Contract.—Where wife had performed her part of agreement with husband to make reciprocal wills, and husband's will on his death could not be found, equity will impress a trust on property given by father to son and daughter, though wife had knowledge that husband had secured possession

of will, but did not know he contemplated revocation or intended to violate contract.

GARDNER & DENTON for appellants.

LAWRENCE B. FINN for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

The validity of the reciprocal will of Joseph B. Wright, and of reciprocal wills in general, is brought in question by this action commenced in the Simpson circuit court by Mrs. Safrano Wright, widow of Joseph B. Wright, against Cornelius Wright and Evangeline Travelstead, the two surviving children of Joseph B. Wright, deceased.

On March 31st, 1915, appellee, Safrano Wright, and her husband, Joseph B. Wright, each executed a separate will, devising and bequeathing to the other all property of the devisor of every kind and wherever situated, the survivor to take and own all of the property then owned by them separately, the wills, which are in the same words except the names, reading:

"I, Joseph B. Wright, of Black Jack neighborhood in northeast Simpson county, Kentucky, being of sound mind and disposing memory, do make and publish this my last will and testament, hereby revoking all wills made heretofore by me.

"1. I will and bequeath to my beloved wife Safrano Wright, with whom I now live, all the property of whatever kind, both personal or real, or mixed, that I may own at my death after my just debts and funeral expenses have been paid.

"2nd. It is my will that my said wife have full power to use said property as she may choose, with power to will, or convey, or otherwise dispose of said property."

On June 19, 1921, Joseph B. Wright departed this life survived by his wife, appellee, Safrano Wright, but the will executed by him could not be found. On discovering that the notes, money and choses in action owned by the husband were in the hands of appellant, Cornelius Wright, and Evangeline Wright Travelstead, children of Joseph B. Wright, who claimed to be the owners thereof by gift from their father, this action was

instituted by Mrs. Wright against the two children of her deceased husband, praying that the property and money of the husband found in the possession of the son and daughter be adjudged to belong to appellee and that the children be adjudged trustees holding and possessing the property for the use and benefit of appellee, Safrano Wright, and that she be adjudged a lien upon the property of the son and daughter, to the amount and value of the money and property received by them respectively from her deceased husband; and further, that the son and daughter be required to turn over and deliver to plaintiff "all such notes, moneys and assets that they have received from the said plaintiff's husband, and if the same cannot be done, that she be awarded such a sum in damages as may equal the amount thus received from this plaintiff's husband, the said Joseph B. Wright, deceased." A general prayer for such orders and judgment, both general and special, as she might appear entitled to, was also added. The court found from the evidence that the claim of appellee, Safrano Wright, "is sustained by the evidence. Therefore, it is the judgment of the court that the plaintiff acquired good and valid lien upon the property and estate of her husband, Joseph B. Wright, deceased, left by him at the time of his death, to-wit: June 19, 1923." It is the further judgment of the court that at the time of the said Joseph B. Wright's death that he was then the owner of and entitled to the possession of certain notes and money and ordered the defendants, Cornelius Wright and Evangeline Travelstead, to deliver the notes and money received by them from their father (each set out and described in the judgment), to appellee, Safrano Wright, but directing that if the notes and property could not be delivered then appellants were required to deliver their equivalent in money, the sums being set out. From that judgment this appeal is prosecuted.

The wills of Mr. and Mrs. Wright were prepared on the same day at the same place by Prof. A. H. Hill, a close personal friend of the deceased, Joseph B. Wright, both Mr. and Mrs. Wright being present and requesting Prof. Hill to draw the wills and instructing and directing him how they wanted to dispose of their respective properties; and further telling him that they had entered into an agreement or compact between themselves by which they were to make reciprocal wills, the survivor to take

all the property owned by them both on the death of either. After stating his age, residence and occupation and that he was personally acquainted with Mr. and Mrs. Wright, Prof. Hill testified:

"Early one morning, I believe it was before my breakfast, Mr. Wright and Mrs. Wright rang the door bell and I went to the door and Mr. Wright, knowing me well, said 'Albert, we have come in to make out wills today, and wanted you to write them.' I said, 'All right, I will be down to my office just after breakfast; you all go ahead and I will come.' I came down and they came into my office and I said, 'Now, give me the full idea of what you want.' He did the talking. He said, 'Well, we have agreed that the one dying first will leave all he or she has got to the other, and we want our wills written that way,' and I said, 'Mrs. Wright, is that your will?' and she said, 'It is.' And I said, 'It is fully understood between you then as I understand it, that you are to have all he has at his death, if he dies first, and he is to have all you have if you die first,' and they both assented, and I wrote the wills accordingly, and I called in Dr. Lamb and explained the thing to Dr. Lamb in their presence, and we talked it over, and Dr. Lamb and I witnessed their wills and the signatures of each other in the presence of each other."

Dr. Lamb, who signed the wills as attesting witness, corroborated the evidence given by Prof. Hill concerning what the parties said with respect to their agreement to make reciprocal wills. There is also evidence proving due execution of the wills by Mr. and Mrs. Wright and the delivery of the wills to Prof. Hill to be held by him for Mr. and Mrs. Wright, and that Mr. and Mrs. Wright went away after having executed the testamentary papers and depositing them with Prof. Hill for safekeeping. It is further shown in the evidence that Joseph B. Wright, now deceased, within a few days after the making of the testamentary papers called on Prof. Hill and obtained from him the testamentary paper signed by Joseph B. Wright, and took it away with him, cautioning Prof. Hill not to disclose to appellee, Safrano Wright, or to anyone the fact he had obtained his will. In the course of events and before the death of Joseph B. Wright, Prof. Hill communicated to appellee the fact that her husband had obtained his will and carried it away with him but be-

sought her not to mention the matter to Joseph B. Wright, or to any of the Wright family, for fear that they would become angry with him for giving out the information. There was no evidence to show why Joseph B. Wright asked for and obtained his will from Prof. Hill and carried it away with him. After his death the will could not be found, and it is intimated in the record that Mr. Wright, after obtaining the will, destroyed it, and then delivered the notes, money and choses in action which constituted his property and which was intended to be covered by the reciprocal will executed by him, to his son and daughter without notifying his wife, appellee, Safrano Wright, of the fact he had obtained his will or had thereafter destroyed it or intended to revoke the will, or that he had or intended to give his notes, money and property to his son and daughter in violation of the agreement between him and appellee to make reciprocal wills and to give the survivor all the property owned by each.

Where a husband and wife agree that the survivor shall have all the property left at the death of the predecedent, each having substantially the same amount of property, and to effect the agreement, execute mutual wills with appropriate provisions, a binding contract subsists; and if the predecedent revokes the will thus executed, equity will grant relief to the survivor who has faithfully carried out the agreement. 40 Cyc., p. 2118; 28 R. C. L. 172, section 129; Brown v. Webster, 37 L. R. A. (N. S.), p. 1196.

"Mutual wills," says 28 R. C. L. 167, "are those which are reciprocal in their provisions giving the property of each testator to the other. Such wills are sometimes called reciprocal, double or counter wills. A will strictly mutual is, in legal effect, nothing but the individual will of that one of the testators who may die first. A will that is both joint and mutual is one executed jointly by two persons, the provisions of which are reciprocal and which shows on its face that the devises are made one in consideration of the other."

In considering the nature and character of reciprocal wills Thompson, in his work on Wills, page 32, says:

> "Mutual wills, that is, where two persons execute wills reciprocal in their provisions by separate instruments, may or may not be revocable at the pleasure of either party, according to the circum-

stances and understanding upon which they are executed. To deprive either party of the right to revoke such mutual wills, it is necessary to prove such wills were executed in pursuance to a contract or a compact between the parties and that each is the consideration of the other."

The Supreme Court of Iowa, in the case of Stewart v. Todd, 190 Iowa 283, 20 A. L. R. 1272, in considering facts very similar to those now before this court said:

"Before coming to the real merits of the controversy, we have to say that the contract relied upon was one which the parties had a right to make. There is no statutory inhibition against the making of such a contract, and when it rests upon a good consideration, it is enforceable. . . . A married woman can contract freely with relation to her own property. . . . It is true that as a testamentary instrument it cannot be enforced, but an agreement to leave property to another, resting upon a consideration, is valid and binding, and will be enforced by the courts. . . . "

In that same case the court, in determining the rights of the survivor under the reciprocal wills after the probate of a subsequent will by the decedent, said:

"The will undoubtedly passed the property to these parties named in the last will, but they took it impressed with a trust in favor of the party to whom the promise was originally made. Courts of equity, considering that done which ought to be done, will enforce the original contract by impressing a trust on the property received under the second will in favor of the original promise.

"Inasmuch as their original contract rested on the mutual promise of the contracting parties, carried out and recognized by the making of reciprocal wills, it cannot be rescinded except by the consent of both. As it takes the mutual consent of both to make a contract, so it takes the mutual consent of both to rescind or destroy the contract."

This court in the case of Skinner v. Rasche, 165 Ky. 109, had under consideration the enforcement of a contract to devise property, and said, in substance, that such an undertaking may be enforced by fastening a trust

upon the property of the decedent, in the hands of his heirs, devisees, personal representatives and others holding the property, with notice of the contract or as volunteers. We see no reason why the rule should not be applied with equal force and effect in cases of reciprocal wills where one party without the knowledge or consent of the other undertakes to dispose of his property covered by the reciprocal wills in violation of the terms of the agreement and of these instruments.

Undoubtedly there was a sufficient consideration to support the mutual agreement of the parties to make reciprocal wills devising to the survivor all the property of both. Many of the texts as well as the opinions which we have reviewed lay down the proposition that the mutual promises of the parties in cases like this were sufficient to support the agreement and to make the contract binding. Moreover, there was in this case a part performance of the contract by each of the parties. The appellee performed her part of the contract in full by executing the will, devising all of her property to her husband, and delivering that will, in accordance with the agreement with her husband, to Prof. Hill to be held, and who held it, and was to hold it, until it should become effective by her death or until the will of her husband, Joseph B. Wright, became effective in her favor by his death, and she never receded from her agreement or violated any of the terms thereof, although she learned before the death of her husband that he had asked for and obtained his will from Prof. Hill and carried it away. She did not know, however, that her husband contemplated a revocation of his will, or intended to violate the contract made between them by which each was to devise to the other all of his or her property. Had she known that her husband had destroyed his will, and, therefore, intended to revoke it and to violate the agreement to make reciprocal wills, there is authority for holding that the will of the husband would become ineffectual and he would have been released from the agreement to make the will as would also the wife. But, on the other hand, there is abundant authority for holding, and, indeed, it seems to be the general rule that where one of the persons to an agreement undertakes secretly and without the knowledge of the other to revoke his will and to dispose of his property in a manner contrary to the provisions of his will, his efforts are futile where the other party to the

agreement has faithfully kept it and there was a sufficient consideration to support the agreement.   Even though a will is revoked under such circumstances by the execution of another will disposing of the property to other devisees, and such subsequent will is probated, the property in the hands of the takers with notice of the first will, or in the hands of volunteers, is impressed with a trust and may be subjected to the payment of compensatory damages to the party who has faithfully kept the terms of the contract to make reciprocal wills. In the instant case the son and daughter of the decedent are shown to have received practically his entire estate, consisting of notes, choses in action and money, as a gift from their father. While specific performance cannot be had, the court below very properly awarded appellee damages equivalent to the sum total of the property received by appellants from their father in violation of the terms of the contract made by him with appellee for the execution of reciprocal wills. Following a well settled principle applicable in cases like this, the court could not have done less.   The existence of the contract to make reciprocal wills is fully established, as is also the fact that appellee fully carried out her part of the agreement and kept faith to the last.   In such case equity regards that as done which should have been done, and regards the appellants in this case as trustees, holding the property of the decedent for the use and benefit of appellee, and if they have or should convert it to their own use so that it may not be delivered in kind to appellee, then appellee is entitled to full compensation for the property and effects of her deceased husband, thus converted.   The trial court having so held its judgment is affirmed.

Judgment affirmed.