## Gibson et al. v. Crawford.

(Decided Dec. 16, 1932.)

VIRGIL P. SMITH, BEN V. SMITH & SON and JAMES DENTON for appellants.

B. J. BETHURUM for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Reversing.

By this appeal appellants Mrs. M. H. Gibson and the other heirs at law of A. J. Crawford, deceased, who were defendants below, are seeking a reversal of a judgment in favor of appellee, Mrs. Kate C. Crawford, plaintiff below, in which it was held that the latter is the owner and entitled to the possession of all property owned by A. J. Crawford at the time of his death or to the equivalent thereof in cash; and that appellants took same under a will of decedent, impressed with a trust, and subject to rights and interest of appellee acquired under a contract alleged in her petition.

The alleged facts on which appellee based claim to the relief sought in substance and effect are: On April 17, 1922, appellee and her husband entered into a verbal contract and agreement to make and execute mutual wills whereby, upon the death of either, the survivor should receive all the property, real and personal, of the decedent, and in conformity with such an agreement, A. J. Crawford did execute a will whereby he devised and bequeathed to appellee in fee his entire estate, both real and personal. At the same time and with a purpose to carry out her part of the agreement, appellee likewise executed a will devising and bequeathing to her husband in fee her entire estate, both real and personal. The two wills were put away and kept in the home of the parties until after the death of Mr. Crawford in March, 1930, when Mrs. Crawford produced the will of her deceased husband in the county court and it was duly admitted to probate. Thereafter, an instrument purporting to be a will of A. J. Crawford, dated September 22, 1925, was offered for probate, whereupon the order probating the former will was set aside and another order entered admitting the latter instrument to probate as the last will and testament of deceased. By the latter will, after the usual formalities of revoking former wills and directing payment of deceased's debts, it was provided that the residue of his estate of every nature and character be divided and distributed in accordance with the statutes of descent and distribution as in cases of intestacy. Appellee and her husband were each possessed of separate estates of a value of $40,000 or more, that of the husband consisting almost entirely of real estate. Appellee had no notice or knowl-

edge that her husband intended to or had changed his will until the second will was offered for probate. She further alleges that by reason of the contract made between her and her husband and the execution of the mutual wills to carry same into effect, she acquired a lien upon the property owned by her husband and same was from that date held by him in trust for her benefit, which trust became active and her right and title thereto became vested at his death; that under the attending circumstances, her husband by reason of the execution of the mutual wills was without authority to revoke same by a later will so as to defeat or avoid his contract to devise his estate to her, or to vest title to his property in another beneficiary by his will dated September 22, 1925. The two wills executed by Mr. Crawford are fully set forth in the petition.

The adult defendants and the infant defendants by their guardian ad litem demurred to the petition, and by answer defendants, other than the infants, denied that mutual wills were executed by appellee and her husband pursuant to an agreement entered into between them by which each was to devise his property to the other, or that such agreement was ever entered into between them.

The guardian ad litem for the infants by answer alleged that the property of appellee and her husband consisted largely of real estate and that the personal property owned by deceased at his death was no more than sufficient to pay his debts and the expense of settling his estate; that if the parties entered into a contract as alleged in plaintiff's petition, same was within the statute of frauds, and since not in writing, was not binding upon either of the parties.

By reply, the affirmative matter in the answer of the guardian ad litem was controverted, and on the issues thus made, the case went to trial with the result herein before indicated.

Counsel for appellants maintain that a contract to devise real estate is within the statute of frauds and to be enforceable must be in writing; that mutual wills executed pursuant to an oral contract are revokable and that one of the parties to the agreement may make a subsequent valid will which will be entitled to probate; that the execution of mutual wills to carry out an oral

agreement to devise real estate, and made simultaneously with such an agreement, is not a sufficient writing to satisfy the statute of frauds; that the contract in the case at bar is not one that equity will enforce. On all these propositions, counsel for appellee, as a matter of course, takes the contrary view.

Controversy is made as to the competency of appellee as a witness, the sufficiency of the evidence to establish the alleged contract, and as to whether or not appellee had notice of appellant's intention to revoke his will made under the alleged agreement. However, under the conclusions reached by the majority, these questions may be disregarded and the case treated as though appellee had sustained her allegations by uncontradicted proof.

In passing to a consideration of the questions presented, it may be noted that counsel for appellants argue that a party intending to take advantage of the statute of frauds may raise the question by demurrer or by a general denial. While the answer of defendants, other than the infants, does not specifically plead and rely on the statute of frauds, they entered a general demurrer to the petition, and, as already indicated, made a general denial of the allegations with respect to the contract. Perhaps there was contention over this question in the court below, but none is made by appellee here. The question as to whether a contract for the sale of lands is within the statute of frauds may be raised by demurrer, Cornett v. Clere, 193 Ky. 590, 236 S. W. 1036, 22 A. L. R. 720; Simpson v. Peavyhouse, 207 Ky. 155, 268 S. W. 814; Nugent v. Humpich, 231 Ky. 122, 21 S. W. (2d) 153. Or under a general issue or a general denial as to the execution of the contract alleged. Klein v. Liverpool, etc., Ins. Co., 57 S. W. 250, 22 Ky. Law Rep. 301; Johnson v. Broughton, 183 Ky. 628, 210 S. W. 455.

Section 470, Kentucky Statutes, in so far as pertinent provides:

"no action shall be brought to charge any person— * * * upon any contract for the sale of real estate * * *"

A contract to devise real estate is regarded and treated by this court and by courts generally as in the nature of a contract for the sale thereof and, as such, comes with-

in the quoted provision of our statute relating to contracts for the sale of land. Waters v. Cline, 121 Ky. 611, 85 S. W. 209, 750, 27 Ky. Law Rep. 479, 586, 123 Am. St. Rep. 215; Walker v. Dill's Adm'r. 186 Ky. 638, 218 S. W. 247; 25 R. C. L. 585, section 189, and cases cited in note 18 thereunder.

As a general proposition it has been uniformly held in this state and in practically every other jurisdiction that a parol contract to devise real estate comes within the inhibition of the statutes of frauds and therefore an action for its enforcement cannot be maintained. Gernhert v. Straeffer's Ex'r, 172 Ky. 823, 189 S. W. 1141; Waters v. Cline, supra; Walker v. Dill's Adm'r, supra; Phillips v. Murphy, 186 Ky. 763, 218 S. W. 250; Broughton v. Broughton, 203 Ky. 692, 262 S. W. 1089; Quirk v. Bank of Commerce & Trust Co., 244 F. 682, 157 C. C. A. 130; Gould v. Mansfield, 103 Mass. 408, 4 Am. Rep. 573; Canada v. Ihmsen, 33 Wyo. 439, 240 P. 927, 928, 43 A. L. R. 1010; McClanahan v. McClanahan, 77 Wash. 138, 137 P. 479, Ann. Cas. 1915A, 461; Hale v. Hale, 90 Va. 728, 19 S. E. 739; Allen v. Bromberg, 163 Ala. 620, 50 So. 884; Pond v. Sheean, 132 Ill. 312, 23 N. E. 1018, 8 L. R. A. 414; Goodloe v. Goodloe, 116 Tenn. 252, 92 S. W. 767, 6 L. R. A. (N. S.) 703, 8 Ann. Cas. 112; Loper v. Sheldon's Estate, 120 Wis. 26, 97 N. W. 524; 27 C. J. 208, 209, and 25 R. C. L. 585, and cases cited.

While counsel for appellee gives recognition to the general rule as above stated, it is in effect argued that where mutual reciprocal wills are executed in the circumstances shown here, the promise of one of the parties constitutes a consideration for the promise of the other; and that after the execution of the wills, a binding and valid contract subsisted which could not be canceled or set aside except by mutual consent of both parties; and that deceased having revoked his will made pursuant to their agreement by a later will, she is entitled in equity to the relief granted below because she faithfully carried out her agreement by executing her will in conformity therewith which was not revoked before the death of her husband; and further that the contract may be enforced after the death of her husband by fastening a trust upon the property which he agreed to devise to her in the hands of the heirs, devisees, or others, holding same.

As a matter of first impression, it appears that there is a great conflict of authorities dealing with the question of contracts to devise land. By far the greater number of cases are dealing with contracts or agreements to make a devise in consideration of services performed or to be performed, etc., while the others deal with contracts to make mutual wills, and in the latter class are included contracts where parties agree to make devises to each other in fee or for life with remainder over, or to devise to third parties. Most of the states have statutes similar to ours, but in some the statute has been adopted with modifications and exceptions. When the cases are carefully studied, analysed, and classified, giving consideration to the different phases, factors, and circumstances entering into or involved in the particular case, it will be found that the conflict and disagreement is not so great as first appeared.

In the case of Phillips v. Murphy, 186 Ky. 763, 218 S. W. 250, 251, it appears that two sisters, who lived upon a tract of land owned by one of them and which adjoined a tract owned by the other, entered into a parol agreement whereby they were to jointly use the two tracts as though owned in common and to make mutual wills, each devising to the other her land for life with remainder in fee to the children of a brother. One sister died in 1896 and the other in 1912, but at the time of their deaths, neither had title to the land devised by the wills made under the agreement; each having theretofore conveyed same. The court, holding the contract to devise real estate to be unenforceable and without legal efficacy, said:

> "The alleged agreement between the sisters to reside while both lived upon an enjoy their lands in common and each dispose of her own land by will as planned in such agreement was given no legal efficacy by the execution then or later of a will by each as agreed. The agreement, not being in writing, was clearly within the statute of frauds. It could not have prevented the parties hereto from revoking the wills made by them respectively, though they were executed to carry out an agreement."

In Hill v. Harding, 92 Ky. 76, 17 S. W. 199, 437, 13 Ky. Law Rep. 380, this court, in disposing of a conten-

tion that a joint will was a nullity for the reason that it destroyed the power of revocation on the part of both parties, said:

"Authorities of some weight are cited in support of this position, and to make an irrevocable will would be the creation of an instrument unknown to the law."

And after holding a joint will to be invalid, the opinion continued:

"If Andrew Tate, one of the testators, who survived his brother, had revoked the will in so far as he was interested in the property devised, his right to do so would have been sustained. It was his estate, and he had the right to dispose of it as he pleased; and if his own circumstances in life changed, or if the objects of his affections had forfeited their claims to his bounty for reasons to himself deemed sufficient, we perceive no reason why he could not have altered the will, in so far as it affected his interest in the property."

In the case of Canada v. Ihmsen, supra, it is said:

"Wills are, as courts express it, ambulatory in their nature; that is to say, revokable at the pleasure of the testator until his death. In the absence of a contract, there is nothing to hinder a testator of sound mind from changing his will as often as he pleases. At the same time a man may make a contract to leave his property by will in the same manner that he may make a contract to sell it."

The foregoing authorities, holding that mutual wills may be revoked and that oral contracts to make such wills are unenforceable, are in accord with the great weight of authorities. Schouler on Wills (5th Ed.) sec. 458a; Alexander on Wills, sec. 85 et seq.

To satisfy and conform to the requirements of the statute of frauds, it is essential that the material conditions and terms of the contract appear in writing so that it may be established without resort to parol evidence. Swain v. Burnette, 89 Cal. 564, 26 P. 1093; Zellner v. Wassman, 184 Cal. 80, 193 P. 84; Hartenbower v. Uden, 242 Ill. 434, 90 N. E. 298, 28 L. R. A. (N. S.) 738; Browne on Statute of Frauds, sec. 371.

Leaving out the parol evidence in the case at bar,

what evidence remains to establish the contract? The wills of Mr. and Mrs. Crawford in which no reference is made to the contract or the terms thereof. Mutual wills, whereby the parties reciprocally devise real estate to each other, are not sufficient written evidence or memorandum of the contract to meet the requirements of the statute. Phillips v. Murphy, supra; Browne on Statute of Frauds, sec. 345B; McClanahan v. McClanahan, supra; In re Edwall's Estate, 75 Wash. 391, 134 P. 1041; Frazier v. Patterson, 243 Ill. 80, 90 N. E. 216, 27 L. R. A. (N. S.) 508, 17 Ann. Cas, 1003; Edson v. Parsons, 155 N. Y. 555, 50 N. E. 265.

This court has consistently held that a will speaks from the death of the testator and no right or property can pass under it until then. The will of Mr. Crawford devising his property to his wife having been revoked by a subsequent will, she took nothing under the first, and the contract being unenforceable there is nothing left upon which to base her action. Phillips v. Murphy, supra; Pond v. Sheean, 132 Ill. 312, 23 N. E. 1018, 8 L. R. A. 414; Ellis v. Cary, 74 Wis. 176, 42 N. W. 252, 4 L. R. A. 55, 17 Am. St. Rep. 125; Brantingham v. Huff, 174 N. Y. 53, 66 N. E. 620, 95 Am. St. Rep. 545; Finger v. Anken, 154 Iowa, 507, 131 N. W. 657; Rodman v. Rodman, 112 Wis. 378, 88 N. W. 218; Wallace v. Long, 105 Ind. 522, 5 N. E. 666, 55 Am. Rep. 222; Owens v. McNally, 113 Cal. 444, 45 P. 710, 33 L. R. A. 369; Renz v. Drury, 57 Kan. 84, 45 P. 71; Cooper v. Colson, 66 N. J. Eq. 328, 58 A. 337, 105 Am. St. Rep. 660, 1 Ann. Cas. 997: Manning v. Pippen, 86 Ala. 357, 5 So. 572, 11 Am. St. Rep. 46.

In support of the contention that alleged contract is valid and enforceable, appellee relies on the case of Wright v. Wright, 215 Ky. 394, 285 S. W. 188, and also on the cases of Brown v. Webster, 90 Neb. 591, 134 N. W. 185, 37 L. R. A. (N. S.) 1196; Skinner v. Rasche, 165 Ky. 108, 176 S. W. 942; Stewart v. Todd, 190 Iowa, 283, 173 N. W. 619, 180 N. W. 146, 20 A. L. R. 1279; Turnipseed v. Sirrine, 57 S. C. 559, 35 S. E. 757, 76 Am. St. Rep. 580.

In the case of Wright v. Wright, the opinion shows on its face that the estate consisted entirely of personalty and the question of the statute of frauds was not involved. This is also true in the case of Turnipseed v. Sirrine, supra. As to the case of Brown v. Webster, it

may be noted, as was in the case of Canada v. Ihmsen, supra, that the provision of the Nebraska statute (Comp. St. 1911, c. 32, sec. 3) requiring a contract for the sale of land to be in writing is followed by two sections (sections 4, 6), one of which provides:

"The preceding section shall not be construed to affect in any manner the power of a testator in the disposition of his real estate by a last will and testament, nor to prevent any trust from arising or being extinguished by implication or operation of the law."

And the other that:

"Nothing in this chapter contained shall be construed to abridge the powers of the court of chancery to compel the specific performance of agreements in cases of part performance."

An examination of the case of Skinner v. Rasche discloses that it is not in point here, since benefits had been received and accepted under a devise.

Finally, it is urged by counsel for appellee that the purpose and design of the statute is to prevent fraud and perjuries, and that it should not be allowed to operate as a means of fraud. Counsel is quite correct in that assertion, since this court has uniformly held the statute to be a shield and not a sword, and has consistently refused to permit it to operate to the protection of one who invokes it to avoid a contract under which he has received substantial benefits, money or property which is withheld by him to the prejudice and injury of the other party. But we have found no case, and none has been called to our attention, where, under a statute like ours and in similar circumstances, equity has interposed to lift the agreement out of the statute.

This is not a case where one of the parties has performed valuable services or has surrendered or given up any money or property as a consideration either in part or in complete performance of the contract. And we are only dealing with and applying the statute and authorities to the facts and circumstances of the case presented. By this contract, appellee, was not deprived of any money or property, but her situation with respect to her property is exactly the same as it would have been if the alleged contract had never been made. It was left

and still remains in her exclusive possession and control, without any limitation or restriction upon her right to use or to dispose of it in such manner as she may desire.

The statute was not intended to, nor does it in fact, deprive persons of the right to contract with respect to their real estate, but merely prescribes the formalities with which the execution of the contract must be attended to give it legal efficacy. This court has never hesitated to apply it where, as in this instance, its requirements have not been complied with, and a refusal to give it application in this instance would in effect nullify it and open the door to the very evils and abuses which it was intended to prevent.

Judgment reversed, with directions to set same aside and enter a judgment sustaining demurrers and dismissing the petition.

Whole Court sitting.

Richardson and Willis, JJ., dissenting.

Willis, J. (dissenting).

I cannot concur in the conclusion of the court because I believe the result to be unjust, unreasonable, and unsupported by authority.

It is unjust because it deprives a faithful wife of the fruits of a fair contract after she had rendered full performance of the consideration. It sets the seal of judicial sanction upon a glaring fraud on the rights of a confiding spouse who trusted her husband and relied upon his solemn agreement.

It is unreasonable because it extends a statutory rule beyond its terms and applies it to a situation it was not enacted to reach or intended to govern. It defeats the purpose of untutored people who may desire in a simple way to accomplish a lawful and laudable object. It deprives a common contract of its sanction and tends to undermine domestic confidence. It perverts the statute designed to prevent frauds into an instrumentality of injustice. It submerges the essential aims of the law, and sacrifices substantial rights to vindicate a technical rule of evidence not properly applicable to the conditions that existed.

It is unsupported by authority because the author-

ity of a case lies in what it decides as distinguished from what is declared, and no authority cited in the majority opinion dealt with a case like the one now presented. Moreover, the decisions in cases like the present one, involving the making and maintenance of mutual wills between husband and wife, pursuant to a fair contract freely made, are in favor of enforcing such contracts. Rightly understood, and as applied to the facts of this record, the authorities call for an affirmance of the judgment of the circuit court.

The oral contract was simply an agreement between a husband and wife to make and to maintain mutual wills for their mutual benefit. The wills were made, the contract was executed, and the transaction was then complete. This was not an action to enforce an oral contract to make a will when no will at all had been made. The action was in equity to subvert the fraudulent revocation of a will actually made under a fair contract upon a good consideration, and which had been fully and faithfully performed by the plaintiff. The oral contract is brought in collaterally as the source of the covenant not to revoke the will, which covenant supplants the conventional right of revocation.

The parol evidence is admissible on many grounds. It explains the connection and consideration of the two writings, which were executed coincidentally for a common purpose. It supplies the whole transaction of which the executed wills are merely integral parts. It is not the original agreement to make mutual wills that is involved. No land was sold by that agreement. The property was devised by the will and would have passed under it, but for the fraud of the husband. The oral agreement is invoked as an obstacle to a revocation of the husband's will. It is the compact not to revoke the wills that is vital now. To call that a sale of land is to misuse terms, and to misconceive legal distinctions. The will, if let alone, controls the transfer of the land. The covenant not to revoke merely preserved the will inviolate. The right to revoke a will is subject to the control of the person who owns such right, and when that person agrees, in consideration of a like agreement in his favor, to give up the right, the agreement is valid. Each will is the consideration for the other, and the entire consideration may be shown even if it results in the contradiction of a writing. The integral

parts of the entire transaction are probably by parol to explain the writings.

The judgment of the circuit court is supported by ample authority. 40 Cyc. 1073; 28 R. C. L. p. 172, sec. 129; Schouler on Wills (5th Ed.) vol. 1, p. 577, sec. 485a; Underhill on the Law of Wills, vol. 1, p. 19, sec. 13; Alexander on Wills, vol. 1, sec. 85, sec. 87, sec. 88 and sec. 91, pp. 96-105; Breathitt v. Whittaker's Ex'rs, 8 B. Mon. 530; McGuire v. McGuire, 74 Ky. (11 Bush) 152; Skinner v. Rasche, 165 Ky. 108, 176 S. W. 942; Wright v. Wright, 215 Ky. 394, 285 S. W. 188; Anderson v. Anderson, 181 Iowa, 578, 164 N. W. 1042; Brown v. Webster, 90 Neb. 591, 134 N. W. 185, 37 L. R. A. (N. S.) 1196; Harris v. Morgan, 157 Tenn. 140, 7 S. W. (2d) 53; Stewart v. Todd, 190 Iowa, 283, 173 N. W. 619, 180 N. W. 146, 20 A. L. R. 1272; Woods v. Dunn, 81 Or. 457, 159 P. 1158; Stevens v. Myers, 91 Or. 114, 177 P. 37, 2 A. L. R. 1155; Carmichal v. Carmichael, 72 Mich. 76, 40 N. W. 173, 1 L. R. A. 596, 16 Mm. St. Rep. 528.

The case of Wright v. Wright is put aside on the ground that the property subjected to the trust was personalty. But the only property owned by the plaintiff in that case was land. And the decedent's land had been converted into personalty after the will was made. The situation in our state produced by the majority opinion is this: The spouse who makes a mutual will may enforce it against the other, if the estate is in the form of a personalty, even though the plaintiff's property was real estate, and the contract was oral. But if the surviving spouse owns personalty and the one that dies first leaves only land, the contract cannot be enforced, unless it is in writing. The consequence is that the contract is valid as to one party and invalid as to the other. It offers to the unscrupulous an opportunity to play a game of heads I win and tails you lose. The statute of frauds was not discussed in the Wright opinion, but the question lurked in the record, was discussed in the briefs, and must have been considered by the court. The case of Phillips v. Murphy, 186 Ky. 763, 218 S. W. 250, did not present a suit by the parties to the contract. It was an attempt by collateral heirs to fasten a trust on land, although the parties to the contract had sold and conveyed the land. The contract thus had been rescinded

by mutual consent. In the case of Canada v. Ihmsen, 33 Wyo. 439, 240 P. 927, 932, 43 A. L. R. 1010, strongly relied upon by the majority opinion, total strangers in blood had made mutual wills. It was held to partake of the character of a gambling contract and invalid, but the court observed:

> "It may, however, be that certain arrangements of property, like that made among members of a family, should be put upon a somewhat different footing from those made between strangers in blood. In Lewis v. Lewis, 104 Kan. 269, 178 P. 421, the court says that such arrangements between husband and wife should be favored. That view is not dissimilar to the view adopted by the civil law. Alexander on Wills, sec. 70."

The court says that Mrs. Crawford gave up no money or property as a consideration for the contract, and that she still has her original holdings to use and to dispose of as she desires. But such is not the actual fact. From the execution of the wills till the death of her husband, Mrs. Crawford gave up the right to revoke her will and to dispose of her property as she pleased. If she had died first, Crawford would have gained, although he had secretly and fraudulently superseded his will by another one. After the event of his death it is entirely unfair, and wholly inaccurate, to say that his wife gave up nothing of value. Such a consideration is ample and measures up to all the definitions of that elusive conception. Brown v. Webster, supra; Wright v. Wright, supra; Brady v. Equitable Trust Co., 178 Ky. 693, 199 S. W. 1082; Sternberg Dredging Co. v. Bondurant's Ex'r, 223 Ky. 668, 4 S. W. (2d) 686; Farmers Bank v. Williams, 205 Ky. 261, 265 S. W. 761. And even in cases where an oral contract cannot be enforced, the law affords a remedy to the party who has performed his part of the bargain. If the measure of recovery is not fixed by any legal standard, the amount fixed by the oral contract is accepted as fair and just. Doty's Adm'rs v. Doty's Guardian, 118 Ky. 220, 80 S. W. 803, 26 Ky. Law Rep. 63, 2 L. R. A. (N. S.) 713, 4 Ann. Cas. 1064; Boone v. Coe, 153 Ky. 233, 154 S. W. 900, 51 L. R. A. (N. S.) 907; Haralambo's Adm'r v. Christopher, 231 Ky. 550, 21 S. W. (2d) 983.

Furthermore, the principle of equity which forbids the statute of frauds to be invoked to consummate a

fraud applies with full vigor, and should be employed to do justice in this case. 27 C. J. sec. 426, p. 340; Glazebrook v. Glazebrook's Ex'r, 227 Ky. 628, 13 S. W. (2d) 776; Fields v. Hoskins, 182 Ky. 446, 206 S. W. 763.

I am authorized to state that Judge Richardson concurs in the dissent.