## Price v. Aylor et al.

(Decided Feb. 19, 1935.)

J. W. CAMMACK and T. A. PERRY for appellant.

G. A. & J. L. DONALDSON for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Affirming.

On October 15, 1931, C. W. Price and Pauline Price, husband and wife, each of whom had passed well beyond the meridian of life, executed a joint will which reads:

"We, C. W. Price and Pauline Price, husband and wife of Carrollton, Kentucky, both being of sound mind, do hereby make our last will and testament, hereby revoking all other wills heretofore made by us or either of us.

"First: All of the real estate and personal property now owned by us is the result of our joint labors and especially through the efforts of C. W. Price, although for sometime the title to the realty and the money in bank have been in the name of Pauline Price. On the death of one of us, all of the property owned by us shall become the property of the survivor, subject to the payment of the just debts and funeral expenses of the one first departing this life.

"Second: On the death of the survivor all of the just debts and funeral expenses of the survivor are to be paid, including $100.00 to the Oddfellows Cemetery of Carrollton, Kentucky, for perpetual care of our lot therein.

"Third: Upon the death of both of us or the death of the one surviving the other, we give and bequeath to our niece, Bertha Jones, the sum of $50.00; to our nephew, Allen Jones, the sum of $100.00, and the Executor hereinafter named, the sum not to exceed $200.00 for the purpose of erecting a monument at the grave of our sister, Susie Jones.

"Fourth: All the residue of our property, real, personal and mixed, including life insurance, which has not heretofore been disposed of by the survivor, and after the special bequests heretofore made in this will have been paid, upon the death of both of us or the death of the one surviving the other, we give share and share alike to our nephews, Harry Aylor, Bert Aylor, William Aylor, Elmer Aylor, and Lyter Aylor. In the event that any of said Aylors should die without leaving issue, then his or their portion shall go to the survivors thereof per stirpes, and if any of said Aylors should die leaving issue surviving them, the issue of those so surviving shall take their respective parents' portion.

"Fifth: We hereby nominate W. T. Mosgrove, as executor of this our will and request of him to see that its provisions are fully carried out.

"In testimony whereof we have signed our names hereto this October 15, 1931."

Pauline Price died in May, 1932, and the joint will was duly probated as her last will and testament. W. T. Mosgrove, the nominated executor, was duly qualified as such. On January 17, 1933, he made a final settlement of his accounts as executor with the county court; this settlement showing that there came into his hands, as personal property of deceased, cash on deposit and the proceeds of a certificate of deposit to the amount of $2,602.64. After paying the costs of administration, burial expenses, a marker for the grave, etc., he paid to C. W. Price as sole legatee under the will of decedent the balance amounting to $2,020.73.

At the time the will was executed and at the time of her death, testatrix and her husband occupied a house and lot which had been conveyed to her in 1906, and this passed by her will. Shortly after the death of testatrix, C. W. Price again married, and on June 16 he executed and delivered to his second wife, Laura H. Price, a deed for the real estate owned by his former wife. He died in July, 1933, testate, and by a will left all his property to Laura H. Price and named her as his executrix.

Thereafter, Harry Aylor, and the other residuary legatees mentioned in the fourth paragraph of the joint will, instituted this action asking for a declaration of rights, alleging that at the death of C. W. Price, under the provisions of the will of Pauline Price, they became and are the owners of all real and personal property belonging to Pauline Price at the time of her death, subject, however, to specific bequests set out in the second and third paragraphs of the joint will. They prayed for a construction of the will, for a cancellation of the deed from C. W. Price to Laura H. Price, and that they be adjudged title to the residue of the estate of Pauline Price after payment of the specific bequests made in her will and the payment of the just debts of C. W. Price, including the expenses of his last illness and burial.

In addition to a denial of the material allegations of the petition, Laura H. Price, in a second paragraph of her answer set up the deed executed to her by C. W. Price for the real estate in controversy and his will making her sole devisee, and alleged that under this deed and will she became the owner of all property of

every kind and description owned by C. W. Price at the time of his death; that under the provisions of the will of Pauline Price, C. W. Price became the owner of all the property of every description owned by her at the time of her death, subject to the specific devises mentioned in the will.

She asked that she be adjudged the absolute owner of the real estate and all other property owned by C. W. Price at the time of his death, subject to the payment of the debts and burial expenses of C. W. Price and Pauline Price and to the specific bequests in the joint will.

On final hearing it was adjudged that under the joint will probated as the last will and testament of Pauline Price, all of the real and personal property owned by her at the time of her death was devised and bequeathed, subject to the legacies announced in the second and third paragraphs thereof, share and share alike, to Harry Aylor and the other plaintiffs, subject only to the use thereof during the life of C. W. Price and subject to his right during his lifetime to dispose of so much thereof as might be necessary for his maintenance and support; and that at his death they became the owners of all the property belonging to C. W. Price and Pauline Price at the time of the death of the latter which had not been disposed of by him for his maintenance and support during his lifetime. Laura H. Price is prosecuting this appeal.

Counsel for appellant argue in effect that since there was an absolute devise in fee to the survivor under the first paragraph of the joint will the subsequent limitation over of the property remaining at the death of the survivor was void. On the other hand, it is the contention of counsel for appellees that as evidenced by the will as a whole, the survivor merely took a life estate with the right to full enjoyment and use of the property for his maintenance and support, with limitation over, which was and is valid.

It is a cardinal rule in construing wills that the intention of the testator will, if possible, be determined from the instrument as a whole and the language employed by the testator in framing his will will control, regardless of the technical and collateral rules of construction, unless its meaning be ambiguous, doubtful, or obscure. Subsidiary and aiding rules of

construction will not be resorted to when upon a broad and liberal view of the will as a whole, the intention of the testator is clearly manifest. Watkins et al. v. Bennett et al., 170 Ky. 464, 186 S. W. 182; Walker v. Irvine's Ex'r, 225 Ky. 699, 9 S. W. (2d) 1020; Jones v. Jones' Ex'rs, 198 Ky. 756, 250 S. W. 92; Wintuska v. Peart, 237 Ky. 666, 36 S. W. (2d) 50, 51; Weedon et al., v. Power, 202 Ky. 542, 260 S. W. 385. In the case of Wintuska v. Peart et al., supra, the court quoted with approval from Greenway v. White, 196 Ky. 745, 246 S. W. 137, 139, 32 A. L. R. 1385, wherein it was said:

"It may be admitted that some of the earlier decisions, including, perhaps, some from this court, under the ancient common-law doctrine that there could be no limitation upon a fee, held that, where a will or other instrument of conveyance gave an estate absolutely to one with express or implied power of unrestricted disposition, the estate could not be reduced by any subsequent provision of the instrument, but the courts generally, including this one, have long since come to the conclusion that the rule requiring the intention of the maker, either of a will or deed, as gathered from the entire instrument, to prevail, overshadows and dispenses with the ancient technical, common-law rule, and that, where it appears from the entire language of the will or deed that it was the intention of the maker to limit the estate given or granted to less than an absolute one, that intention will prevail."

Viewing the joint will as a whole in the light of the modern and liberalized rules of construction as indicated by the foregoing authorities, the conclusion is inescapable that it was the intention of the testator and testatrix that the survivor should take a life estate with full and unrestricted right to its use and enjoyment and for his or her maintenance and support. Possibly, and if necessary, it might have been used for such purpose even to the extent of exhaustion; but it is equally clear that it was the intention of the parties that whatever might remain at the time of the death of the survivor should pass under the fourth paragraph of the will, subject to the special bequests and the provisions as to payment of debts. The foregoing authorities and a number of others, many of which are mentioned therein, fully sustain this conclusion.

It is further argued by counsel for appellant that although the joint will may have been made pursuant to an agreement between the parties, C. W. Price had a right to revoke it by the will made subsequent to the death of Pauline Price, and as supporting this contention the case of Gibson v. Crawford, 247 Ky. 228, 56 S. W. (2d) 985, is cited. In that case it was alleged that under an agreement Mr. and Mrs. Gibson executed mutual wills, each devising their property to the other. Prior to his death, Mr. Gibson executed another will making different disposition of his estate. It was the contention of Mrs. Gibson that by reason of the contract and the execution of mutual wills to carry out same, she acquired a lien upon the property owned by her husband and same was, from the date thereof, held by him in trust for her benefit and that the trust became active and her title to the property vested at his death. It was held in effect that the contract came within the statute of frauds and, since not in writing, was void. In that case neither of the wills made any reference to the contract or to the terms thereof, and it was held that to satisfy the requirement of the statute of frauds, the material conditions and terms of the contract should appear in writing so that they might be established without resort to parol evidence, and that mutual wills whereby the parties merely devised real estate to each other did not constitute sufficient memorandum of the contract to meet the requirements of the statute. The opinion cited domestic and foreign cases holding that wills are ambulatory in their nature and are revocable at the pleasure of the testator until his death. However, in harmony with authorities generally, it further held that one may make a valid contract concerning testamentary disposition of his property.

It is a further rule of general application that such a contract may be established by mutual and reciprocal wills or by joint wills when such instruments on their face disclose the contract. See Beveridge v. Bailey, 53 S. D. 98, 220 N. W. 462, 60 A. L. R. 619, authorities therein cited and annotations; Stevens v. Myers, 91 Or. 114, 177 P. 37, 2 A. L. R. 1155 and notes. While the will under consideration clearly bespeaks an understanding and agreement of the parties to make testamentary disposition of their property, joint and several, in the way and manner provided by the will, the great weight of authority indicates that it is immaterial.

whether in this instance the contract is evidenced by sufficient writing to give it validity under the statute of frauds, since C. W. Price elected to and did accept the full benefits accruing to him under the joint will which was probated after the death of his wife.

In Alexander on Wills, vol. 1, sec. 85, the author says:

"The general rule seems to be, although not undisputed, that if two persons execute wills at the same time, either in one or two instruments, making reciprocal disposition in favor of each other, the mere execution of such wills does not impose such a legal obligation as will prevent revocation without notice, by either during their joint lives. The case is different, however, where the mutual or reciprocal wills are the result of a contract based upon a valid consideration, where there has been a joining of property interests for the purpose of making a testamentary disposition of the same, or, where, after the death of one, the survivor has accepted benefits under the will of the other, which was executed pursuant to an agreement."

To the same effect, see also Underhill on the Law of Will, vol. 1, sec. 19; Beveridge v. Bailey, supra; Stevens v. Myers, supra, and annotations.

The judgment of the lower court, being in accord with prevailing rules in this and other jurisdictions, must be and is affirmed.