## Smith et al. v. Newton et al.

September 28, 1948.

James R. Watts and P. M. Basham for appellants.

Percy Shumate for appellees.

OPINION OF THE COURT BY JUDGE KNIGHT—Affirming.

Emmett Smith and R. W. (Bob) Smith were brothers and lived together on a farm of about 225 acres located in Meade County which they jointly owned. Emmett never married and was about 69 years of age when he died in March 1940. R. W. Smith was married to Vera Smith who died in 1944. They had no children. R. W. Smith, aged 67, died in January 1947, not having remarried. On August 16, 1934, Emmett and R. W. Smith properly executed a joint will, the pertinent part of which provided as follows:

"First. In the event that Emmett dies first it is agreed and understood that after his just debts and funeral expenses have been paid and fully satisfied, his

one-half interest, both real and personal, is to go to his brother, R. W. Smith.

"Second. In the event R. W. Smith dies first his one-half interest, both real and personal, shall go to his wife, Vera Smith, for her to do with as she pleases and, at her death whatever remains, to *got* to R. W. Smith's brother Emmitt, in case he is living, or in the event he dies before the said Vera Smith, then the entire estate, both real and personal, is to be divided among the heirs of their deceased brother, Frank Smith, the remaining brother to act as executor, without bond."

Upon the death of Emmett Smith in 1940, the above will was duly probated in the Meade County Court as his will. R. W. Smith qualified as executor and in due course filed a final settlement showing he had paid all debts against the estate and then had taken over the balance of the estate, real and personal, as devisee under the joint will above referred to. This settlement was approved by order entered in the Meade County Court on December 2, 1940.

On March 4, 1946, R. W. Smith executed his individual will, the pertinent parts of which are as follows:

"Item II. I will and devise and bequeath to Claude Newton 100 acres of land to be cut off my farm from the West side thereof said land to be run off of said west side the entire length of my farm and of sufficient width to make the 100 acres, the said Claude Newton to have same to *to* do with as he sees fit with fee simple title, said West side being the line between my said farm and the farms of Claude Parks and Forrest Butler and including in said boundary the house in which I now live.

"Item III. I will, devise and bequeath all the rest and residue of my property, real estate *personap* property and mixed property, money on hands and in bank and all the rest of my property of whatever kind and nature to my nieces and nephews, children of my brother Frank Smith, deceased, to-wit:

"Orvie Smith, Mary Elizabeth Cain, Robert Smith, and Chris Smith, same to be divided equally between them, *sahre* and share alike."

After the death of R. W. Smith in January 1947, this will was, on February 5, 1947, duly probated as and for his last will over the objection of the children and heirs of Frank Smith, and C. H. Pile qualified as administrator with the will annexed of his estate.

Shortly thereafter this suit was filed by appellants, children and heirs at law of Frank Smith, deceased brother of Emmett and R. W. Smith, against appellees Claude Newton, a devisee under the will of R. W. Smith, and C. H. Pile, administrator of that will. After allegations of facts, as substantially above stated, they prayed that the probation of the will of R. W. Smith on February 5, 1947, be set aside and held for naught; that it be adjudged that R. W. Smith was without authority to revoke the joint will of August 16, 1934, entered into with his brother Emmett Smith; that Claude Newton acquired no title to the 100 acres devised to him under the will of R. W. Smith but holds same in trust for appellants under the joint will of August 16, 1934 which they pray be held to be the last will of R. W. Smith, deceased, and that under this will the property in controversy be adjudged to pass to appellants as children and heirs at law of Frank Smith, deceased. From a judgment denying them the relief sought and dismissing their petition, appellants prosecute this appeal.

### Proof in the Case.

Most of the evidence introduced by appellants was for the purpose of showing the relationship of the parties, dates of death and other information heretofore set out in this opinion. For the appellants the proof further shows that about 71 acres of the land jointly owned by Emmett and R. W. Smith were bought by them from their father who had inherited it from his father, and the remainder of the 225 acres was bought from others; that during their lifetime they had often been heard to express the desire that their property remain in the Smith family and that it had been fixed up so it would remain in the family.

For the appellees it was shown that appellee Claude Newton was a nephew of Vera Smith, wife of R. W. Smith; that he had lived at the home of R. W. and Emmett Smith at various times since he was a small boy helping them with their crops and doing other work in

and about the place; that when his aunt, Vera Smith, died, Emmett Smith having previously died, there was no one left to keep house for R. W. Smith and he was left alone; that he sent for appellee Claude Newton, who was at that time employed by a railroad company, and on March 4, 1946, they entered into a written contract under the terms of which Newton and his wife moved to the farm of R. W. Smith all living together in the main dwelling house on the farm; that under this contract R. W. Smith was to furnish the land and half the livestock and Claude Newton was to bear all the expenses of raising the crops and feeding the livestock with all proceeds to be divided on a fifty-fifty basis; that Newton and his wife were to furnish Smith with board, care and nursing services and take good care of him in case of sickness. On the same day this contract was executed, R. W. Smith executed his individual will, heretofore quoted, by which he devised to Claude Newton the 100 acres of land involved in this dispute, leaving the balance of his property to the children of Frank Smith, appellants herein.

### The Question Involved.

The sole question involved in this case is a construction of the joint will executed by Emmett and R. W. Smith on August 16, 1934. Is it an irrevocable joint will under which appellants are entitled to claim all the joint property of Emmett and R. W. Smith standing in the latter's name at the time of his death, as appellants contend, or did R. W. Smith take absolute title to Emmett Smith's interest in the property under the joint will of which he could devise a portion to Claude Newton, as he did by his subsequent will of March 4, 1946? Only the 100 acre tract devised to Claude Newton by this latter will is involved in this case.

We think the Chancellor gave the correct answer to this question and his reasons therefor appear to us to be so sound that we adopt them as our views. They are as follows:

"As I construe the joint will, if Emmett died first his whole will and intention are set out in the 'First' clause; and if Bob died first, the whole disposition is set forth in the 'Second' clause. If this be correct, then Emmett intended an outright gift of his one-half to Bob

should Emmett die first, which he did, thereby vesting all his interest in Bob. On the same hypothesis, should Bob die first, leaving his wife, Vera, surviving, his one-half would pass to her under the will. Emmett, of course, in this event would still own his own one-half; and if thereafter Vera died before Emmett, what was left of Bob's half at her death would go to Emmett; but if, after Bob had so pre-deceased Emmett, Emmett should die before Vera, then on Vera's death Frank's heirs would come in. And these intentions seem to have been concurred in by both the brothers.

"But if this be not the whole question presented, then in any event two things had to happen before Frank's heirs became beneficiaries; (1) Bob must die before Emmett (the 'Second' clause being prefaced with the words, 'In the event R. W. Smith dies first'); and (2) both Bob and Emmett must die before Vera. Neither of these contingencies happened. It seems to have been the intention of the two brothers to take care of these three persons (Emmett, Bob and Vera) first, they having accumulated the property, and likewise their intention that if Bob should survive Emmett, he should have Emmett's one-half of the property; but if Emmett should survive Bob and Vera, he should have Bob's one-half, or what was left of it after Vera's death. However, if Bob had died first and Vera had outlived Emmett, then the gift over to Frank's heirs would have taken effect. In other words, as I get the intention, Frank's heirs were to take (if at all), not in preference to either one of the testators who survived, or his vendees or other beneficiaries, but only in preference to Vera's heirs should she become a taker.

"Further, in my opinion, it was never intended that any one of the three first takers (in the event of their taking)—Emmett, Bob and Vera—could not freely use and even consume the property willed to him or her, for support, maintenance and comfort; and after all, that is all that Bob did with it. Being the survivor of both Emmett and Vera, and so left alone and coming to the necessity for someone to take care of and look after him, on March 4, 1946, he entered into a contract with Claude Newton (Vera's nephew) for the operation of the farm and personal services to be rendered, and on the same day executed the new will complained of, giv-

ing Newton 100 acres of the land (first being assured he could revoke this will if things did not work out right), and willing the remainder of all the real and personal property to Frank's heirs, and appointing one of them (Robert Smith) as executor, who failed to qualify and the defendant, C. H. Pile, was appointed administrator with will annexed, at whose hands the plaintiffs will be entitled to receive their part of the estate under Bob's will of March 4, 1946.''

In support of their contention that the devises made in the joint will of Emmett and R. W. Smith were made in consideration of each other and are therefore irrevocable, appellants cite and rely on Wright v. Wright, 215 Ky. 394, 285 S. W. 188; Rudd v. Gates, 191 Ky. 456, 230 S. W. 906; Skinner v. Rasche, 165 Ky. 108, 176 S. W. 942, and Price v. Aylor, 258 Ky. 1, 79 S. W. 2d 350.

In the case of Wright v. Wright, supra, J. B. Wright and his wife, Safrono Wright, under oral agreement to do so, executed mutual but separate wills by which each devised to the other all the property of every kind owned by each at the time of his or her death. These wills were left with the scrivenor, who prepared them, for safekeeping. Within a few days thereafter Mr. Wright, without knowledge of his wife, obtained from the scrivenor, who had them in charge, the mutual will which he had executed under agreement with his wife, destroyed the will and turned his property, which was all personal property, over to his children. In a suit by Mrs. Wright against these children after the death of Mr. Wright, this court held that an agreement to make mutual wills was a valuable consideration and since Mrs. Wright had lived up to her part of the agreement, the will of Mr. Wright was irrevocable. The widow was allowed to recover the property which had been turned over by Mr. Wright to his children and which they claimed as a gift. The basis of the permitted recovery was the fraud practiced by Wright against his wife. Clearly the will and the factual situation in the Wright case and in the case at bar are so different that the Wright case is not controlling here.

The Rudd v. Gates case supra did not involve a joint or mutual will. It merely held that when a devisee enters into a parol agreement with a devisor to receive,

hold and dispose of the devised property in a given way, a constructive trust arises which equity will enforce even though the testamentary paper purports to give the property absolutely to the devisee. In that case there was overwhelming proof of an agreement between the devisor and the devisee which the devisee failed to carry out after the death of the devisor. There was no proof of any such agreement in the case at bar and no similarity in the facts in the two cases. We do not therefore regard the Rudd case as pertinent to the construction of the will in the instant case.

The facts in the Skinner v. Rasche case supra are in no way similar to the instant case. In that case there was a specific agreement to devise all of decedent's property to Mrs. Skinner on condition that her parents surrender her, then a child five years old, to the devisor, which was done. The court simply upheld this agreement to devise. There was no such agreement in the case at bar.

The principal case relied on by appellants and the one nearest like the case at bar is that of Price v. Aylor, 258 Ky. 1, 79 S. W. 2d 350. In that case a husband and wife made a joint will which provided that upon the death of either of them, all the property owned by either of them should become the property of the survivor and on the death of the survivor, all property not disposed of by the survivor should go to named nieces and nephews of both parties. After the death of the wife, the husband remarried and deeded the property, which he had taken under the joint will, to his second wife and also left a will by which he devised all his property to her. Suit was filed by the Aylors against the surviving widow and in construing the will, this court held that the surviving husband of the first wife took only a life estate in the property which passed under the joint will with right to use so much thereof as was necessary for his maintenance and support and upon his death any property not so used by him passed to the Aylor nieces and nephews under the joint will. The basis of the decision was that it was clear from the will as a whole that it was the intention of the makers of the joint will that the survivor should take only a life estate with unrestricted right to its use and enjoyment, even to the extent of exhaustion if necessary, for his or her mainte-

nance and support but that whatever might remain at the time of the death of the survivor should pass to the nieces and nephews named in the will after payment of debts and the special bequests set out in the will. It further held that contracts concerning testamentary disposition of property may be established by a joint will where such instruments disclose such contracts on their face.

We think the will being construed in the instant case shows no contractual agreement between Emmett and R. W. Smith that would indicate that it was their intention to make an irrevocable joint will or that it shows on its face that it was their intention that the devise to R. W. Smith was only for his use during his life with remainder at his death to go to the heirs of the deceased brother Frank Smith. As we construe Paragraph I of the will, upon the death of Emmett, his one-half interest was devised absolutely to R. W. Smith and the principle laid down in the Price v. Aylor case supra has no application. Had R. W. Smith died first and his wife Vera survived him, then the principle laid down in the Price v. Aylor case supra would have been applicable. She could have used what was needed for her support and maintenance but could not have disposed of what remained at her death but under Clause II of the will it would have to go to Emmett, if living, but since he predeceased Vera, the remainder would have gone to the heirs of Frank Smith just as it went to the Aylor nieces and nephews in that case.

## Conclusion.

Since we are in accord with the construction of the joint will by the Chancellor that R. W. Smith took absolute title to Emmett Smith's one-half interest under the first clause of said will and that he had full right to devise any portion of it to appellee, Claude Newton, as he did under the second clause of his subsequent will, the judgment of the lower court dismissing plaintiff's petition is affirmed.

Judgment affirmed.