**LOUISVILLE AND JEFFERSON COUNTY METROPOLITAN SEWER DISTRICT, and City of Louisville, Kentucky, Appellants,**

v.

**SANITATION DISTRICT NO. 1 of JEFFERSON COUNTY, and Bankers Bond Co., Appellees.**

Court of Appeals of Kentucky.

Oct. 20, 1961.

Rehearing Denied Feb. 16, 1962.

Raymond F. Bossmeyer, James G. Becker, Louisville, Ky., William E. Berry and Robert L. Durning, Jr., Louisville, for appellants.

Franklin P. Hays, Louisville, for appellees.

CULLEN, Commissioner.

The City of Louisville and the Louisville & Jefferson County Metropolitan Sewer District brought action against Sanitation District No. 1 of Jefferson County and appropriate class representatives of the holders of the outstanding bonds of the Sanitation District, seeking to acquire by eminent domain proceedings the ownership of the sewer pipes of the Sanitation District that lie in the streets of and serve the area commonly known as the St. Matthews Business District, which area was annexed by the City of Louisville in 1957. The circuit court entered a summary judgment holding that the plaintiffs had no legal right to condemn the sewer lines. The plaintiffs have appealed from that judgment.

Basically the question presented is one of construction of statutes. Three statutory provisions are involved. One is the statement in KRS 220.080(2) that none of the provisions of the statutes governing sanitation districts "shall be applicable within the corporate boundary of any city of the first class, nor shall they be binding upon such city or any part thereof, or any land or property within the boundary of such city." Another is that part of KRS 76.170 (1) declaring that where a metropolitan sewer district includes a city of the first class "any territory annexed to such city shall thereby immediately become a part of the district." The third is the provision of KRS 76.110 that nothing in the metropolitan sewer district law shall be construed to give such a district "any power to acquire by agreement, purchase or gift, or by eminent domain proceedings, any fee, right, title, interest or easement in property included within the boundaries of any sanitation district organized under KRS Chapter 220, except necessary rights of way for

trunk sewers through such sanitation districts."

The circuit court, having found as a fact that the sewer lines in question are "within the boundaries" of the Sanitation District, apparently concluded that by virtue of the provisions of KRS 76.110 the City and the Metropolitan Sewer District had no right to condemn the sewer lines.

We believe that the proper interpretation of the involved statutes is to be found in the decisions in Sanitation District No. 1 of Jefferson County v. Louisville & Jefferson County Metropolitan Sewer District, 307 Ky. 422, 208 S.W.2d 751, and Sanitation District No. 1 of Jefferson County v. City of Louisville, 308 Ky. 368, 213 S.W.2d 995. Both of these cases involved declarations as to the respective rights and obligations of the City, the Metropolitan Sewer District, the Sanitation District, and the holders of the bonds of the latter, in the event of annexation by the City of all or part of the Sanitation District. While the opinions in those cases did not directly construe the statutes here in question the conclusions reached furnish the lead to the proper construction of the statutes.

A primary question in each of the two cases above referred to was whether, by virtue of certain statutory provisions, the City of Louisville would become liable for the bonded obligations of the Sanitation District in the event of an annexation. In both cases the holding was that the City would not become liable. The question then followed as to how the bonded obligations would be met in case of annexation. In the first of the two cases the answer was that the bonds "would continue to be a *prior and extra charge*" (Our emphasis) upon the annexed sewers and the property using them. The Court went on to point out that this would result in the property owners in the annexed area being required to pay sewer service charges to meet the bond obligations and at the same time to pay service charges to the Metropolitan Sewer District. While recognizing that this might

be inequitable the Court said that it was *not dealing with equities but with the* construction of legislative acts.

In the second of the two cases the Court had this to say with regard to the payment of the bonds of the Sanitation District (213 S.W.2d 1002):

" * * * The Sanitation District will continue to exist as such after annexation and its functions and duties will be in no manner altered. * * * The Board of Directors of the Sanitary District will continue to have exclusive jurisdiction and duty to fix and collect sewer charges, and should they fail in such duties, the holders of the bonds may enforce performance by them. *So long as the District has debts validly created and outstanding,* it cannot dissolve or be dissolved, and, as we now hold its debts will remain the debts of the District. * * * " (Our emphasis.)

The interpretation sought by the appellees to be placed on the above quoted language is that annexation of part of the Sanitation District by the City would in no way affect the rights and powers of the Sanitation District, and it would continue to operate exactly the same as if there had been no annexation. However, when this language is taken in connection with the holding in the first case, and in the context of the full opinions in both cases, we think it is clear that it means that, following annexation by the City, the Sanitation District would continue its functions in the annexed area only to the extent and for the period necessary to meet the bond obligations chargeable to the property in the annexed area.

· If the two cases had intended to hold that in the event of annexation by the City of part of the Sanitation District the city and its sewer operating agency (the Metropolitan Sewer District) should have absolutely no rights or duties with respect to sewer service in the annexed area, it

would have been a simple matter to say so. Instead, the Court approached the cases on the basis that the City and the Metropolitan Sewer District would have complete jurisdiction over sewer service in the annexed area were it not for the problem of meeting the bond obligations of the Sanitation District.

We think that the only reasonable interpretation of the two cases is that they hold that the annexed area becomes part of the city for sewer service purposes, and therefore part also of the Metropolitan Sewer District, subject only to the necessities of continued operation by the Sanitation District of its system within the area to the extent and for the period necessary to retire its bonds chargeable against the property in the annexed area. This interpretation is likewise the reasonable interpretation of the statutes.

The appellees argue that the statement of KRS 220.080(2) that none of the provisions of the sanitation district statutes shall be applicable within the corporate boundary of any city of the first class has reference only to the boundaries of the city as they existed at the time of organization of the Sanitation District and does not apply to territory later brought within the city by annexation. They further maintain that KRS 76.170(1), prescribing that where a metropolitan sewer district includes a city of the first class any territory annexed to the city shall thereby immediately become a part of the district, does not apply where the annexed territory was part of a sanitation district. The answer to these contentions is that the statutes on their face do not contain any such qualifications and there is no compelling reason for reading the qualifications into the statutes by implication.

The appellees place great reliance upon the prohibition in KRS 76.110 against a metropolitan sewer district acquiring any right, title or interest in property "within the boundaries of any sanitation district." It seems to us, however, that when the city of the first class has annexed territory which originally was within the boundaries of a sanitation district, and such territory, by virtue of KRS 76.170(1), has then become a part of the city's Metropolitan Sewer District, the territory has in effect been taken out of the boundaries of the Sanitation District, so as to render KRS 76.110 no longer applicable. The fact that the Sanitation District, by necessities arising out of its bond obligations, must continue to exercise some powers in the annexed territory does not mean that the territory remains within its boundaries for general purposes.

The conclusion we have reached as to the proper construction of the statutes makes it unnecessary for us to pass upon the question, to which the briefs give considerable attention, of whether the streets under which lie the sewer pipes sought to be condemned ever were in fact and in law within the boundaries of the Sanitation District.

■ Our conclusion is that upon annexation of the St. Matthews Business District by the City of Louisville the territory became a part of the Metropolitan Sewer District free of any statutory restrictions against a metropolitan sewer district's encroaching upon a sanitation district. However, under the rulings in the two cases hereinbefore discussed, the Sanitation District continued to have the power and duty to operate its system within the annexed territory to the extent and for the period necessary to meet the bond obligations chargeable to the property in the annexed territory.

Since continued operation by the Sanitation District in the annexed territory is simply a means of securing payment of the district's bonds, it would seem that if adequate compensation is paid the district for its physical facilities within the annexed territory, and the bondholders are thus supplied cash in lieu of the physical properties as security for their bonds, the bondholders would have no cause for complaint. Also, it would seem that this would be a way of

solving the problem of securing payment of the bonds more satisfactory than the continuation of limited operations by the Sanitation District in the annexed territory. The only argument the appellees make on this point is that the City and the Metropolitan Sewer District do not want to pay an adequate compensation for the sewer pipes. The answer to that argument is that the condemnation cannot be effected unless the condemnors will pay such compensation as is determined by appropriate proceedings to be adequate.

■ As a secondary argument against the existence of the right of condemnation in this case the appellees maintain that there is no showing of a *necessity* for the taking, which is a prerequisite to any right of condemnation. This argument is based upon the proposition that the Metropolitan Sewer District, the City of Louisville, and the Sanitation District are municipal corporations of the same standing and rank, and there is an established rule of law that when one municipal corporation has property employed in the rendering of a particular public service another municipal corporation of the same standing or rank cannot condemn such property for the purpose of rendering the same service. It is our opinion that this rule has no application here for the simple reason that *in the annexed*

*territory,* by virtue of the provisions of KRS 220.080(2) and 76.170(1), the Sanitation District does not have standing or rank equal to that of the City and the Metropolitan Sewer District. In fact, it has *no* standing or rank in the annexed territory other than a limited right of sufferance arising out of the practical necessity of maintaining adequate security for its bondholders.

■ It seems to us that the reasonable and sensible thing is that all public sewers in the City of Louisville should be operated by and under the control of the city's sewer operating agency. We find nothing in the statutes indicating any intention that it should be otherwise. The practical necessities arising from the existence of bonded obligations of the Sanitation District have required the Court to permit operation of sewers by the Sanitation District within a part of the City on a limited basis. By condemnation of the sewers such a division of operating authority can be eliminated, at the same time giving adequate protection to the bondholders. So it would appear that condemnation is the best solution to the problem.

The judgment is reversed, with directions for further proceedings in conformity with this opinion.